UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROW 1 INC., doing business as
REGENATIVE LABS,

                         *Plaintiff,*

          v.

XAVIER BECERRA,
Secretary of Health and Human Services, *et al.*,

                         *Defendants*.

Civil Action No. 22-0718 (APM)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION………………………………………………………………………...1

BACKGROUND………………………………………………………………….……3

LEGAL STANDARD………………………………………………………………13

ARGUMENT………………………………………………………………………14

CONCLUSION……………………………………………………………………..30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiachak Native Cmty. v. Dep't of Interior*,
    827 F.3d 100 (D.C. Cir. 2016) ................................................................ 16, 17, 18

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ............................................................................................ 14

*Am. Chiropractic Ass'n v. Leavitt*,
    431 F.3d 812 (D.C. Cir. 2005) ........................................................................ 24

*American Freedom Defense Initiative v. Washington Metropolitain Area Transit Authority*,
    901 F.3d 356, (D.C. Cir. 2018) ........................................................................ 17

*Anderson v. Occidental Life Ins. Co.*,
    727 F.2d 855 (9th Cir. 1984) ........................................................................... 28

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997) ............................................................................................ 14

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ........................................................................... 13

*Bowen v. Michigan Academy of Family Physicians*,
    476 U.S. 667 (1986) .......................................................................................... 23

*Califano v. Sanders*,
    430 U.S. 99 (1977) ............................................................................................ 25

*Center for Science in the Public Interest ("CSPI") v. Regan*,
    727 F.2d 1161 (D.C. Cir. 1984) ....................................................................... 16

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ..................................................................................... 3, 14

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004) .......................................................................................... 25

*Church of Scientology of Cal. v. United States*,
    506 U.S. 9 (1992) .............................................................................................. 14

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990) ......................................................................... 18

*Clinton v. Goldsmith*,
    526 U.S. 529 .................................................................................................... 25

*Colorado Heart Inst., LLC v. Johnson*,
    609 F. Supp. 2d 30 (D.D.C. 2009) ................................................................... 25

*Commodity Futures Trading Comm'n v. Nahas*,
    738 F.2d 487 (D.C. Cir. 1984) ......................................................................... 13

*Council for Urological Interests v. Sebelius*,
    668 F.3d 704 (D.C. Cir. 2011) .................................................................... 24, 25

*Friends of Animals v. Bernhardt*,
    961 F.3d 1197 (D.C. Cir. 2020) .............................................................. 3, 15, 16

*Grp. Health, Inc. v. Blue Cross Ass'n*,
    739 F. Supp. 921 (S.D.N.Y. 1990) .................................................................. 29

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ................................................................................... passim

*Helomics, Inc. v. Novitas,*
    Civ. A. No. 15-1667, 2016 WL 374314 (W.D. Pa. Feb. 1, 2016) ........................................ 24

*Herbert v. Nat'l Acad. of Scis.,*
    974 F.2d 192 (D.C. Cir. 1992) ........................................................................................ 14

*Honig v. Doe,*
    484 U.S. 305 (1988) ........................................................................................................ 18

*In re Cheney,*
    406 F.3d 723 (D.C. Cir. 2005) ........................................................................................ 26

*In re Medicare Reimbursement Litig.,*
    414 F.3d 7 (D.D.C. 2005) ................................................................................................ 26

*Initiative & Referendum Inst. v. U.S. Postal Serv.,*
    685 F.3d 1066 (D.C. Cir. 2012) ...................................................................................... 17

*Jerome Stevens Pharm., Inc. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005) ...................................................................................... 13

*Joorabi v. Pompeo,*
    Civ. A. No. 20-0108 (RCL), 2020 WL 2527209 (D.D.C. May 17, 2020)........................ 13

*Kaiser v. Blue Cross of Cal.,*
    347 F.3d 1107 (9th Cir. 2003) ........................................................................................ 29

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ........................................................................................................ 13

*Lovitky v. Trump,*
    918 F.3d 160 (D.C. Cir. 2019) ........................................................................................ 25

*Marsaw v. Thompson,*
    133 Fed. App'x. 946 (5th Cir. 2005) .............................................................................. 29

*Matranga v. Travelers Ins. Co.,*
    563 F.2d 677 (5th Cir. 1977) .......................................................................................... 29

*Midland Psychiatric Assoc., Inc. v. United States,*
    145 F.3d 1000 (8th Cir. 1998) ........................................................................................ 29

*Mills v. Green,*
    159 U.S. 651 (1895)........................................................................................................ 14

*Murphy v. Hunt,*
    455 U.S. 478 (1982) (*per curiam* ................................................................................ 14

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York,*
    140 S. Ct. 1525 (2020)................................................................................................ 3, 14

*Nat'l Athletic Trainers' Ass'n v. Dep't of Health & Human Servs.,*
    455 F.3d 500 (5th Cir. 2006) .......................................................................................... 24

*Nat'l Black Police Ass'n v. District of Columbia,*
    108 F.3d 346 (D.C. Cir. 1997) .......................................................................... 15, 17, 18

*Nat'l Kidney Patients Ass'n v. Sullivan,*
    958 F.2d 1127 (D.C. Cir. 1992) ...................................................................................... 21

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.,*
    694 F.3d 340 (3d Cir. 2012) ........................................................................................... 29

*North Carolina v. Rice,*
    404 U.S. 244 (1971) ........................................................................................................ 18

*Pani v. Empire Blue Cross/Blue Shield,*
    152 F.3d 67 (2d Cir. 1998).............................................................................................. 29

*Pavano v. Shalala*,
  95 F.3d 147 (2d Cir. 1996)..................................................................................... 28
*Peterson v. Weinberger*,
  508 F.2d 45 (5th Cir. 1975) ................................................................................... 28
*Phillips v. McLaughlin*,
  854 F.2d 673 (4th Cir. 1988) ................................................................................. 17
*Physicians Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) ................................................................................. 24
*Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*,
  485 F.2d 1073 (D.C. Cir. 1973) ............................................................................ 27
*Power v. Barnhart*,
  292 F.3d 781 (D.C. Cir. 2002) .............................................................................. 26
*Preiser v. Newkirk*,
  422 U.S. 395 (1975) .............................................................................................. 18
*Reg'l Corp. v. Dep't of Interior*,
  654 F.2d 758 (D.C. Cir. 1980) ......................................................................... 26, 27
*Shalala v. Ill. Council on Long Term Care. Inc.*,
  529 U.S. 1 (2000) ....................................................................................... 22, 23, 24
*Swedish Am. Hosp. v. Sebelius*,
  691 F.Supp.2d 80 (D.D.C. 2010) .......................................................................... 28
*Transwestern Pipeline Co. v. FERC*,
  897 F.2d 570 (D.C. Cir. 1990) .............................................................................. 18
*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) ................................................................................................ 14
*United States v. Erika Inc.*,
  456 U.S. 201 (1982) ......................................................................................... 23, 27
*Vertos Med., Inc. v. Novitas Sols., Inc.*,
  Civ. A. No. 12-3224, 2012 WL 5943542 (S.D. Tex. Nov. 27, 2012)..................... 24
*Weinberger v. Salfi*,
  422 U.S. 749 (1975) ......................................................................................... 21, 23
*Your Home Visiting Nurse Servs., Inc. v. Shalala*,
  525 U.S. 449 (1999) ..................................................................................... 3, 20, 21

**Statutes**

5 U.S.C. § 702............................................................................................................ 20
21 U.S.C. § 393(b)........................................................................................................ 7
21 U.S.C. §§ 301 *et seq.*............................................................................................. 8
21 U.S.C. § 321........................................................................................................... 11
21 U.S.C. § 351........................................................................................................... 11
21 U.S.C. § 352........................................................................................................... 11
21 U.S.C. § 353........................................................................................................... 11
28 U.S.C. § 1331 ..................................................................................................... 3, 20
28 U.S.C. § 1361......................................................................................................... 20
28 U.S.C. § 2201......................................................................................................... 20
28 U.S.C. § 2202......................................................................................................... 20

42 U.S.C. § 202 ........................................................................................................ 8
42 U.S.C. § 262 ........................................................................................................ 8
42 U.S.C. § 262(i) ..................................................................................................... 8
42 U.S.C. § 264 ......................................................................................... 8, 9, 10, 19
42 U.S.C. § 264(a) ..................................................................................................... 8
42 U.S.C. § 405(g) ............................................................................................... 7, 27
42 U.S.C. § 405(h) ............................................................................................... 7, 20
42 U.S.C. § 1302(a) ................................................................................................... 4
42 U.S.C. § 1395 ....................................................................................................... 3
42 U.S.C. § 1395ff ............................................................................................... 2, 4, 6
42 U.S.C. § 1395ff(a)(3) ............................................................................................ 7
42 U.S.C. § 1395ff(a)(l) ............................................................................................. 7
42 U.S.C. § 1395ff(a)(l)(B) ..................................................................................... 22
42 U.S.C. § 1395ff(b)(1)(A) ................................................................................. 6, 7
42 U.S.C. § 1395ff(b)(1)(B) ...................................................................................... 6
42 U.S.C. § 1395ff(b)(l)(A) ....................................................................................... 7
42 U.S.C. § 1395ff(d)(2) ............................................................................................ 7
42 U.S.C. § 1395ff(f)(2)(B) ....................................................................................... 5
42 U.S.C. § 1395g(a) ............................................................................................... 28
42 U.S.C. § 1395hh ............................................................................................. 4, 19
42 U.S.C. § 1395k ...................................................................................................... 4
42 U.S.C. § 1395k(1)(1) ............................................................................................ 4
42 U.S.C. § 1395k(a)(l) ........................................................................................... 21
42 U.S.C. § 1395kk-1 ................................................................................................ 5
42 U.S.C. § 1395kk-1(d)(3) ..................................................................................... 29
42 U.S.C. § 13951(e) ................................................................................................. 6
42 U.S.C. § 1395m(j)(5) ............................................................................................ 4
42 U.S.C. § 1395u(a) ........................................................................................... 5, 28
42 U.S.C. § 1395x(s)(1) ............................................................................................ 4
42 U.S.C. § 1395x(s)(2)(A) ....................................................................................... 4
42 U.S.C. § 1395x(s)(6) ............................................................................................ 4
42 U.S.C. § 1395x(s)(8) ............................................................................................ 4
42 U.S.C. § 1395x(s)(9) ............................................................................................ 4

**Regulations**

21 C.F.R. § 1271 ...................................................................................... 9, 10, 19
21 C.F.R. § 1271.10(a) .......................................................................... 10, 11, 13
21 C.F.R. § 1271.15 ............................................................................................ 10
21 C.F.R. § 1271.20 ...................................................................................... 10, 11
21 C.F.R. § 1271.3(d) ........................................................................................... 9
42 C.F.R. Part 405 ............................................................................................... 27
42 C.F.R. Part 410 ................................................................................................. 4
42 C.F.R. § 405.1002 ............................................................................................. 7
42 C.F.R. § 405.1060(a)(4) ................................................................................... 5
42 C.F.R. § 405.1100 ............................................................................................. 7
42 C.F.R. § 405.1136 ............................................................................................. 7

42 C.F.R. § 405.920 ...................................................................................................... 7

42 C.F.R. § 405.920(b) ................................................................................................. 22

42 C.F.R. § 405.940 ...................................................................................................... 7

42 C.F.R. § 405.960 ...................................................................................................... 7

42 C.F.R. § 411.15(k)(1) .............................................................................................. 4

42 C.F.R. § 421.400 ...................................................................................................... 5

42 C.F.R. § 421.5 ......................................................................................................... 27

42 C.F.R. § 421.5(b) ......................................................................................... 6, 28, 29

42 C.F.R. § 424.5(a)(6) ................................................................................................. 6

42 C.F.R. § 400.202 ...................................................................................................... 5

42 C.F.R. § 405.906(a)(2) ............................................................................................ 6

42 C.F.R. § 405.912 ...................................................................................................... 6

42 C.F.R. § 405.1060 .................................................................................................... 5

45 C.F.R. § 162.100 ...................................................................................................... 6

45 C.F.R. § 160.103 ...................................................................................................... 6

45 C.F.R. § 162.1000(a) ............................................................................................... 6

66 Fed. Reg. 5447 (Jan. 19, 2001) ............................................................................... 9

66 Fed. Reg 58,788, (Nov. 23, 2001) .......................................................................... 5

69 Fed. Reg. 29786 (May 25, 2004) ............................................................................ 9

69 Fed. Reg. 68612 (Nov. 24, 2004) ........................................................................... 9

By and through undersigned counsel, Defendants: Xavier Becerra, in his official capacity as the Secretary of the United States Department of Health and Human Services (the "Department"); the Department; Chiquita Brooks LaSure, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services ("CMS"); CMS; and Noridian Healthcare Solutions, LLC; Wisconsin Physicians Service Insurance Corporation; Novitas Solutions, Inc.; National Government Services Inc.; CGS Administrators, LLC; Palmetto GBA, LLC; and First Coast Service Options, Inc., (collectively "Defendants"), respectfully submit this Memorandum of Points and Authorities in support of their motion to dismiss Plaintiff Row 1, Inc., d/b/a Regenative Lab' ("Regenative") Verified Complaint (ECF No. 1). For the reasons stated below, the Complaint should be dismissed because the Court lacks subject-matter jurisdiction over Plaintiff's claims against Defendants as the matter is moot and there is no justiciable Article III "case" or "controversy" between the parties and because this court's jurisdiction of this case is prohibited by the Medicare statute and otherwise. Additionally, Defendants Noridian Healthcare Solutions, LLC; Wisconsin Physicians Service Insurance Corporation; Novitas Solutions, Inc.; National Government Services Inc.; CGS Administrators, LLC; Palmetto GBA, LLC; and First Coast Service Options, Inc., are Medicare Administrative Contractors (collectively, "the MACs" or "MACs") and therefore enjoy immunity from suit, are not the real party in interest in this litigation, and should be dismissed from the case.

## INTRODUCTION

In this case Plaintiff Regenative, Inc., challenges a Medicare payment directive issued by the Defendant Centers for Medicare & Medicaid services to the MACs. Regenative is a company that manufacturers products containing human cells, tissues, or cellular or tissue-based products ("HCT/Ps"). Its products Coretext and Protext, at issue in this litigation, are made from a

component of umbilical cord tissue called Wharton's Jelly.  Verified Complaint ¶ 1 ("Compl."). In February 2020, Regenative started selling Coretext and Protext to doctors and other health care providers who treat Medicare beneficiaries and thereafter bill Medicare for the products.  *Id.* ¶ 4.

Regenative commenced this action on March 15, 2022, alleging that Defendant CMS instituted a policy that required the MACs to institute a "blanket denial of all claims for any amniotic or placental tissue products."  Compl. ¶ 7.   On February 2, 2022, CMS had in fact issued a Technical Direction Letter, instructing the MACs to deny payments for claims of manipulated amniotic and/or placental tissue biologics for injections because such products are unsafe and experimental.   Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated February 2, 2022, attached as Exhibit A ("Ex. A").  On February 16, 2022, CMS issued a second Technical Direction Letter to provide additional guidance to MACS on how to operationally implement the February 2, 2022, Technical Direction Letter's instructions.   Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated February 16, 2022, attached as Exhibit B.  ("Ex. B").

After Plaintiff filed this action seeking a preliminary injunction and a declaratory judgment vacating Defendant's instruction, CMS issued a third Technical Direction Letter on March 25, 2022, rescinding the two February Letters.  Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated March 25, 2022, attached as Exhibit C ("Ex. C").   The third Letter instructed the MACs to review all amniotic tissue claims to determine whether the use for which it is employed is reasonable and necessary for the treatment of the patient's condition.  *Id.* at 1.  Any denial by the MAC is, then, subject to administrative and judicial review under the procedures authorized by 42 U.S.C. § 1395ff and jurisdiction in this

matter is therefore blocked by the Medicare statute.  *See Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999).

Further, there is no more relief for this Court to award on the allegations in the Verified Complaint because the challenged policy has been rescinded.  In similar cases, where changes have occurred during litigation, the D.C. Circuit, applying Supreme Court precedent, has concluded that claims for prospective relief become moot, meaning there is no justiciable Article III "case" or "controversy" between the parties.  *See*, e.g., *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (*per curiam*), *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020).  Because this action likewise is moot, those D.C. Circuit and Supreme Court precedents necessitate dismissal of the Plaintiff's Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).

Moreover, even if Plaintiff's case was not moot this Court would still lack jurisdiction over this matter because longstanding case law establishes that any claim for relief in cases like this must first be channeled through the available administrative appeals process.  Moreover, because the providers have administrative appeal rights, none of the statutory bases listed by Plaintiff in its Complaint provide a basis for jurisdiction, and the Medicare statute specifically strips jurisdiction of this case under 28 U.S.C. § 1331.

Lastly, the MACs enjoy immunity from suit and are not the real party in interest in this dispute.  The MACs did nothing more than follow the directions of CMS and should be dismissed from the suit.

## BACKGROUND

A.  **The Medicare Program**

The Medicare statute, 42 U.S.C. § 1395 *et seq*., sets forth a federal health insurance program for the elderly and disabled.  Congress granted the Secretary broad authority to issue

regulations providing for the administration of the Medicare program.  *See* 42 U.S.C. § 1302(a).
CMS is the Department component that administers the Medicare program on behalf of the
Secretary.  *See* 45 Fed. Reg. 56,911 (Nov. 19, 1981).  Medicare is comprised of four "parts;" this
case concerns Part B, which provides enrollees with supplementary medical insurance for certain
"medical and other health services," such as physician services and some durable medical
equipment ("DME"), prosthetics, orthotics, and supplies.  42 U.S.C. §§ 1395k(1)(1), 1395m(j)(5),
1395x(s)(1), (2)(A), (6), (8), (9).  *See also* 42 C.F.R. Part 410.

For items and services to be covered and paid for by Medicare, they must be eligible for
coverage under a defined benefit category, not be statutorily excluded from coverage, and
be reasonable and necessary.  *See id.* 42 U.S.C. §§ 1395k, 1395x, 1395y(a)(1)(A).  Congress has
given the Secretary broad authority to determine whether an item or service is covered.  *See id.*
§ 1395ff(a)(1)(B) ("The Secretary shall promulgate regulations and make initial determinations
with respect to benefits under part A or part B" regarding "the amount of benefits available" to a
Medicare beneficiary).   Medicare coverage of specific items and services is subject to an
overriding statutory requirement: "Notwithstanding any other provision of [the Medicare statute],
no payment may be made under part A or part B . . . for any expenses incurred or items or services,
which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to
improve the functioning of a malformed body member."  *Id*. §1395y(a)(1)(A); see also 42 C.F.R.
§ 411.15(k)(1).  Thus, there is no presumption that payment will be made for any item or service
in any particular case.

The Secretary may establish "reasonable and necessary" coverage standards through
formal regulations that have the force and effect of law throughout the administrative process.
42 U.S.C. §§ 1395ff(a)(1), 1395hh.  He may also issue National Coverage Determinations "with

respect to whether or not a particular item or service is covered nationally." *Id.* § 1395ff(f)(1)(B); *see also* 42 C.F.R. §§ 400.202, 405.1060.  Like regulations, National Coverage Determinations are binding on Medicare contractors and adjudicators throughout the Medicare administrative appeals process. 42 C.F.R. § 405.1060(a)(4).  In the absence of a binding national policy such as a regulation or an National Coverage Determination, coverage decisions are "made at the discretion of the local contractors," 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001 final rule), using their best medical judgment, by issuing a local coverage determination, 42 U.S.C. § 1395ff(f)(2)(B), or by using a claim-by-claim adjudicatory model.

At Congress' direction, the Secretary, through CMS, has arranged for many audit and payment functions under Part B of the Medicare program to be carried out through contracts with the MACs, generally private insurance companies (previously referred to as fiscal intermediaries and carriers).  *See* 42 U.S.C. § 1395kk-1, 42 C.F.R. § 421.400, 42 U.S.C. §§ 1395u(a) ("The administration of [Part B] shall be conducted through contracts with Medicare administrative contractors under section 1395kk-1 of this title."), 1395kk-1.  The MACs determine for the Secretary the amount of Medicare payments due to health care entities under Medicare law and under interpretive guidelines published by CMS.  *See id.* § 1395kk-1(a)(4) (these functions include "[d]etermining . . . the amount of the payments required . . . to be made to providers of services, suppliers [including physicians] and individuals," making those payments, "[c]ommunicating to providers any information or instructions furnished to the [MAC] by the Secretary," and performing other functions "necessary to carry out the purposes of the Act.").  In particular, MACs are responsible for processing Medicare claims and ensuring that payments are made in compliance with the requirements of the Medicare statute, including that the products and services billed are reasonable and necessary for the diagnosis or treatment of an illness or injury.

Defendants Noridian, CGS, WPS, Palmetto, First Coast, Novitas, and NGS are currently MACs handling Part B claims.  Their contract with the Secretary, as required by regulation, contains clauses for indemnification by the Secretary for actions taken on behalf of CMS.  *See* 42 C.F.R. § 421.5(b).  "CMS is the real party of interest in any litigation involving the administration of the program."  *Id.*  CMS issues guidance, information, and clarification on the work within the terms of the contract to MACs through Technical Direction Letters.  Technical Direction Letters do not change the scope of the MACs' work as described in their contracts with CMS and MACs must comply with the instructions in a Technical Direction Letter unless the Letter states that compliance is optional.

Each Part B payment claim for items or services furnished by a physician or supplier must be supported by sufficient information and documentation for the MAC to determine if the items or services are covered and the amount of any payment deemed owing.  42 U.S.C. § 13951(e); 42 C.F.R. § 424.5(a)(6).  For medical supplies and other items of DME, prosthetics, orthotics, and supplies, the supplier's electronic claim must include a HCPCS Level II code.  45 C.F.R. §§ 162.1000(a), 162.100; *see also* 45 C.F.R. §§ 160.103, 162.100 (claim must include a code identifying the service or product that was provided).

The Medicare statute and regulations afford several levels of administrative review to program beneficiaries or their assignees[1] who are dissatisfied with a MAC's reimbursement determination.  42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.906(a)(2), 405.912.  Upon conclusion of administrative review, a claimant then has the right to judicial review under 42 U.S.C. § 1395ff(b)(1)(A). (incorporating 42 U.S.C. § 405(g)).  The administrative and judicial review process starts with a claim for payment of items or services.  On receipt of a claim, the MAC issues

---

[1]      *See* 42 U.S.C. § 1395ff(b)(1)(B) (authorizing representation by a provider or supplier).

a notice of "initial determination" addressing whether the items or services are covered and meet all other payment requirements, and, if so, the amount deemed owing for such items or services. 42 U.S.C. § 1395ff(a)(l); 42 C.F.R. § 405.920.

If the claimant (i.e., the beneficiary or any assignee of the beneficiary's claim or appeal rights) is dissatisfied with some aspect of the initial determination, a redetermination may be requested by the same contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940.  At the second step, if the claimant is dissatisfied with the contractor's redetermination, it may request a "reconsideration" by a qualified independent contractor.  42 U.S.C. § 1395ff(b)(l)(A), (c); 42 C.F.R. § 405.960.

For claims that satisfy the statutory amount in controversy requirement, a still dissatisfied claimant may request a hearing, "as provided in [42 U.S.C. §] 405(h)," before an administrative law judge ("ALJ").  42 U.S.C. § 1395ff(b)(l)(A), (E) & (d)(l); 42 C.F.R. § 405.1002.  Furthermore, the ALJ's decision may be reviewed by the Medicare Appeals Council of the Departmental Appeals Board. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. The claimant also may seek judicial review, "as provided in 42 U.S.C. § 405(g)," of the final agency decision after a hearing of the ALJ or the Medicare Appeals Council, as applicable, on claims that meet the statutory amount in controversy requirement.  42 U.S.C. § 1395ff(b)(1)(A), (E), 42 C.F.R. § 405.1136.

## B.    The Public Health Service Act

The Food and Drug Administration ("FDA") is responsible for protecting the public health by ensuring the safety, efficacy, and security of human and veterinary drugs, biological products, and medical devices; and by ensuring the safety of our nation's food supply, cosmetics, and products that emit radiation.  21 U.S.C. § 393(b).  Among other things, FDA is responsible for advancing the public health by helping to speed innovations that make medical products more

effective, safer, and more affordable and by helping the public get the accurate, science-based information they need to use medical products and foods to maintain and improve their health.

FDA regulates biological products under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* and the Public Health Service Act, 42 U.S.C. § 262.  The Public Health Service Act definition of a "biological product" includes any "virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, protein, or analogous product . . . applicable to the prevention, treatment, or cure of a disease or condition of human beings."  42 U.S.C. § 262(i).

In a separate provision, the Public Health Service Act grants FDA broad authority to issue regulations to prevent the transmission of communicable diseases.  Section 361(a) of the Public Health Service Act, 42 U.S.C. § 264, provides:

> The Surgeon General, with the approval of the Secretary, is *authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases* from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a) (emphasis added).  This authority has been delegated to FDA.[2]

In 1997, FDA announced a new proposed approach for regulating a rapidly growing category of biological products—human cells, tissues, and cellular or tissue-based products

---

[2]      The statute grants this authority to the Surgeon General, with the approval of the Secretary. The Office of Surgeon General was abolished by section 3 of 1966 Reorg. Plan No. 3, eff. June 25, 1966, 80 Stat. 1610, and all its functions were transferred to the Secretary of Health, Education, and Welfare (now the Department's Secretary) by section 1 of 1966 Reorg.  Plan No. 3, set out under 42 U.S.C. § 202.  The Secretary's authority has been delegated to FDA.  *See* FDA Staff Manual Guide 1410.10.1.A.3.

("HCT/Ps").   The  tiered,  risk-based  approach  was  designed  to  provide  only  the  degree  of

government oversight necessary to protect the public health and largely relying on manufacturers

to accurately self-designate their products.  *See* Proposed Approach to Regulation of Cellular and

Tissue-Based Products, FDA Dkt. No. 97N-0068 (Feb. 28, 1997) (available at http://www.fda.gov/

downloads/BiologicsBloodVaccines/GuidanceComplianceRegulatoryInformation/Guidances/Tis

sue/UCM062601.pdf); *see also* Proposed Registration Rule, 63 Fed. Reg. 26745, Proposed

Approach to Regulation of Cellular and Tissue-Based Products; Availability and Public Meeting,

62 Fed. Reg. 9721 (Mar. 4, 1997).

       To  implement  this  tiered  approach,  FDA  issued,  through  notice  and  comment

rulemaking, several regulations invoking its communicable disease authority under section 361 of

the Public Health Service Act, 42 U.S.C. § 264.  *See* Human Cells, Tissues, and Cellular and

Tissue-Based Products; Establishment Registration and Listing; Final Rule, 66 Fed. Reg. 5447

(Jan. 19, 2001) ("Final Registration Rule"); Eligibility Determination for Donors of Human Cells,

Tissues, and Cellular and Tissue-Based Products; Final Rule, 69 Fed. Reg. 29786 (May 25, 2004);

Current Good Tissue Practice for Human Cell, Tissue, and Cellular and Tissue-Based Product

Establishments; Inspection and Enforcement; Final Rule, 69 Fed. Reg. 68612 (Nov. 24, 2004).

       The regulations define HCT/Ps as "articles containing or consisting of human cells or

tissues that are intended for implantation, transplantation, infusion, or transfer into a human

recipient."  21 C.F.R. § 1271.3(d).  FDA determined that, in limited circumstances certain HCT/Ps

can be effectively regulated solely by controlling the infectious disease risks that they present.

Such products are regulated only under section 361 of the Public Health Service Act and the

agency's HCT/P regulations (21 C.F.R. Part 1271), even if the HCT/Ps would otherwise meet the

Public Health Service Act's definition of a "biological product."  These products are sometimes

9

referred to as "361 HCT/Ps," after the communicable disease provision in section 361 of the Public

Health Service Act, 42 U.S.C. § 264.  All other human and tissue-based products are regulated as

drugs, devices, and/or biological drugs because they may present a greater degree of risk. 21 C.F.R.

§ 1271.20; Final Registration Rule, 66 Fed. Reg. at 5450.

FDA regulates an HCT/P, that does not otherwise meet any exception in 21 C.F.R.

§ 1271.15, solely under section 361 of the Public Health Service Act (42 U.S.C. § 264) and the

regulations in 21 C.F.R. Part 1271 if it meets the four criteria set forth in 21 C.F.R.§ 1271.10(a).[3]

---

[3]        21 C.F.R. § 1271.10(a) provides:

(a) An HCT/P is regulated solely under section 361 of the PHS Act and the regulations in
this part if it meets all of the following criteria:

(1) The HCT/P is minimally manipulated;

(2) The HCT/P is intended for homologous use only, as reflected by the labeling,
advertising, or other indications of the manufacturer's objective intent;

(3) The manufacture of the HCT/P does not involve the combination of the cells or
tissues with another article, except for water, crystalloids, or a sterilizing,
preserving, or storage agent, provided that the addition of water, crystalloids, or the
sterilizing, preserving, or storage agent does not raise new clinical safety concerns
with respect to the HCT/P; and

(4) Either:

(i) The HCT/P does not have a systemic effect and is not dependent upon
the metabolic activity of living cells for its primary function; or

(ii) The HCT/P has a systemic effect or is dependent upon the metabolic
activity of living cells for its primary function, and:

(*a*) Is for autologous use;

(*b*) Is for allogeneic use in a first-degree or second-degree blood relative; or

(*c*) Is for reproductive use.

Products that fail to meet any of the criteria in section 1271.10(a) remain subject to the provisions of the Food, Drug, and Cosmetic Act and the Public Health Service Act, including the Food, Drug, and Cosmetic Act's adulteration, misbranding, and premarket approval requirements.  *See* 21 U.S.C. §§ 321, 351, 352, 353; 21 C.F.R. § 1271.20; Final Registration Rule, 66 Fed. Reg. 5449, 5456.

From time to time, FDA issues guidance related to HCT/Ps.  *See, e.g.,* FDA Guidance, *Regulatory Considerations for Human Cells, Tissues, and Cellular and Tissue-Based Products: Minimal Manipulation and Homologous Use*, July 2020, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/regulatory-considerations-human-cells-tissues-and-cellular-and-tissue-based-products-minimal (providing current FDA thinking on the 21 C.F.R. § 1271.10(a) criterion of "minimal manipulation" and "homologous use").  FDA may also issue public statements such as public safety notifications, informing the public of serious adverse event reports, consumer alerts, and other patient and consumer resources.  On December 6, 2019, FDA issued a public safety notification in response to multiple reports of serious adverse events experienced by patients in Nebraska who were treated with unapproved products marketed as containing exosomes.    https://www.fda.gov/vaccines-blood-biologics/safety-availability-biologics/public-safety-notification-exosome-products.

On July 22, 2020, FDA issued a consumer alert regarding regenerative medicine products, including stem cell and exosome products, warning consumers about the lack of FDA approval for certain regenerative medicine therapies.    https://www.fda.gov/vaccines-blood-biologics/consumers-biologics/consumer-alert-regenerative-medicine-products-including-stem-cells-and-exosomes.  On June 3, 2021, FDA issued information for patients and consumers that discussed the potential risks and provided advice for people considering the use of regenerative medicine

products.      https://www.fda.gov/vaccines-blood-biologics/consumers-biologics/consumer-alert-regenerative-medicine-products-including-stem-cells-and-exosomes. The 2020 and 2021 postings cautioned that unapproved products include stem cells, stromal vascular fraction (fat-derived cells), umbilical cord blood and/or cord blood stem cells,[4] amniotic fluid, Wharton's jelly, ortho-biologics, and exosomes.

**C.**      **The Technical Direction Letters at Issue in This Litigation**

Because of the dangers identified by FDA in the 2019 public safety notification, 2020 consumer alert, and 2021 posting, CMS issued a Technical Direction Letter on February 2, 2022, to the MACs instructing them to deny claims for Medicare payment for manipulated amniotic and/or placental tissue biologics for injection.  *See* Ex. A.  The Letter stated that manipulated amniotic and/or placental tissue biologics for injection have not been proven to be safe and effective and referenced FDA's safety notices.  The Letter applied to services rendered on or after December 6, 2019.  *Id.* at 1.  On February 24, 2022, CMS issued a follow-up Technical Direction Letter to provide step by step instructions to help the MACs operationally implement the February 2, 2022, Letter in a consistent manner.  *See* Ex. B.

Plaintiff filed its Verified Complaint on March 15, 2022.   ECF No. 1.  Thereafter, on March 25, 2022, CMS issued a Technical Direction Letter to rescind the Letters issued on February 2, 2022, and February 24, 2022, and to provide guidance on how MACs should handle claims that had already been processed under the two earlier Letters.  *See* Ex. C.  Specifically, the Technical

---

[4]      Currently, the only stem cell products that are FDA-approved for use in the United States consist of blood-forming stem cells (also known as hematopoietic progenitor cells) that are derived from umbilical cord blood.  *See* https://www.fda.gov/vaccines-blood-biologics/cellular-gene-therapy-products/approved-cellular-and-gene-therapy-products.  These products are approved for use in patients with disorders that affect the production of blood (i.e., the "hematopoietic" system) but they are not approved for other uses.

Direction Letter instructed the MACs to remove system edits that automatically denied payment for amniotic and placental tissue product injections and to institute claim-by-claim review to determine whether a claim meets the reasonable and necessary criteria outlined under section 1862(a)(1)(A) of the Social Security Act, as well as any other applicable coverage and payment requirements. *Id.* The Technical Direction Letter also directed the MACs to re-open any claims processed under the previous two Letters and evaluate them under that same claim-by-claim review. *Id.* Finally, the Letter instructed the MACs to remove all coverage articles and educational materials that were issued in response to the two prior Letters. *Id.* The Letter required that MACs comply with the Letter's directions within 10 business days. *Id.*

## LEGAL STANDARD

Rule 12(b)(1) "requires courts to dismiss any case over which they lack subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and only have power that is expressly granted to them." *Joorabi v. Pompeo*, Civ. A. No. 20-0108 (RCL), 2020 WL 2527209, at *3 (D.D.C. May 17, 2020) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is the plaintiff's burden to establish that the Court has subject-matter jurisdiction." *Joorabi*, 2020 WL 2527209, at *3 (citing *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). "A federal court presumptively lacks subject matter jurisdiction in a proceeding until a party demonstrates that jurisdiction exists. A party must therefore affirmatively allege in his pleadings the facts showing the existence of subject matter jurisdiction, and the court must scrupulously observe the precises jurisdictional limits prescribed by Congress." *Commodity Futures Trading Comm'n v. Nahas,* 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen*, 511 U.S. at 377 ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction."). In deciding whether to grant a motion to dismiss for lack of jurisdiction, a district court may consider materials outside the pleadings. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d

1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992)).

## ARGUMENT

### I.     ALL CLAIMS IN THE COMPLAINT ARE MOOT BECAUSE CMS RESCINDED THE MEDICARE PAYMENT INSTRUCTION THAT PLAINTIFF CHALLENGES IN THIS ACTION

#### A.     Rescission of the Challenged Regulation Moots Plaintiff's Claims for Injunctive And Declaratory Relief

It is well settled law that a federal court may not "decide the merits of a legal question not posed in an Article III case or controversy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994). A federal court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). There is "no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)) (in turn quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)); *see N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (*per curiam*) (claim for declaratory and injunctive relief against "old" municipal firearms transport rule "is . . . moot" where municipality amended rule and state amended underlying statute after Supreme Court granted review). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant *at all stages* of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted; emphasis added).

Under the mootness doctrine, the D.C. Circuit concluded over a decade ago that prospective relief such as "declaratory and injunctive relief would no longer be appropriate if intervening events have provided the relief sought by the plaintiff against the defendant." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997). More recently, in *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020), the D.C. Circuit reaffirmed the mootness doctrine, holding that "the government's abandonment of a challenged regulation is just the sort of development that can moot an issue." *Id.*

Plaintiffs in *Friends of Animals* challenged certain "findings" of the U.S. Fish and Wildlife Service that would allow sport-hunted animal "trophies" to be imported into the United States. 961 F.3d at 1200. At issue in the case was the U.S. Fish and Wildlife Service's regulation of the importation of the dead bodies (or parts of dead bodies) ("trophies") of sport-hunted animals whose species are endangered or threatened with extinction. *Id.* at 1201. Importation of sport-hunted trophies of threatened species is banned subject to species-specific exceptions. *Id.* The species-specific exceptions hinge on the Fish and Wildlife Service making certain "findings" regarding the impact the killing of an animal will have on the species' survival. *Id.* In *Friends of Animals,* plaintiffs' challenged Fish and Wildlife Service's finding, made in 2017, that killing lions and elephants in Zimbabwe during the years 2016-18 would enhance the species' survival ("2017 findings"). *Id.* After similar "findings" for different years were struck down by the D.C. Circuit because they were legislative rules illegally issued without notice and comment, the Department of Interior withdrew the 2017 findings that were challenged in *Friends of Animals* and announced that it would proceed by informal adjudication. *Id.*

The D.C. Circuit held that the case was moot. *Id.* at 1203. The court noted that the government had withdrawn the challenged findings, eliminating their legal effect and therefore

leaving nothing for the court to adjudicate.  *Id.*  Even though the Fish and Wildlife Service stated that it would use the findings in its informal adjudications, the D.C. Circuit still held that the findings themselves no longer had legal effect and are "classically moot."  *Id.* (quoting *Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 105-06 (D.C. Cir. 2016) (where "[e]ach cause of action challenged the validity of" regulatory exception and "that regulation no longer exists, we can do nothing to affect [challenger's] rights relative to it, thus making this case classically moot for lack of a live controversy")).

As another example, the D.C. Circuit held in *Center for Science in the Public Interest ("CSPI") v. Regan*, 727 F.2d 1161, 1167 (D.C. Cir. 1984), that an intervening change moots a challenge to the prior rule.  The agency in that case "was legitimately empowered to initiate further rulemaking to correct the deficiencies that the district court found in [the prior rule]."  *Id.* at 1164-65.  Because the prior rule that was allegedly the source of the harm had been superseded, the D.C. Circuit concluded that "[a]ny appellate pronouncement on the validity of that rule would be meaningless," and dismissed the appeal.  *Id.* at 1165.  So too here, where the Technical Direction Letters that established the policy of which Plaintiff complains have been rescinded and CMS has instructed the MACs to resume their normal claim review process.

There can be no disagreement that Plaintiff's Complaint seeks declaratory and injunctive relief against the MACs' application of CMS's Technical Direction Letters dated February 2, 2022, and February 16, 2022.  *See* Compl. ¶¶ 10, 115, 117, Prayer for Relief seeking injunctive relief and a declaratory judgment (¶¶ 1.a.-c.).  There also can be no disagreement that the March 25, 2022, Technical Direction Letter rescinded the February 2, 2022, and February 16, 2022, Letters. And, like the disputed findings in *Friends of Animals*, or the disputed regulation in *CSPI*, a decision on the merits of the allegations in the Complaint regarding those earlier and now rescinded Letters

would be an impermissible advisory opinion.  *See, e.g.*, *Nat'l Black Police Ass'n*, 108 F.3d at 351, 354; *Akiachak Native Cmty.*, 827 F.3d at 106; *Phillips v. McLaughlin*, 854 F.2d 673, 674-75 (4th Cir. 1988) ("A request for prospective relief alone, founded on a challenge to a regulation which no longer applies to plaintiffs, does not present an actual case or controversy.").  The case alleged in the Complaint is moot and should be dismissed.

### B.   There is No Reasonable Expectation that the Alleged Violation Will Recur and Interim Relief Has Completely Eradicated the Effects of the Alleged Violation

As the D.C. Circuit explained in both *National Black Police Association* and *American Freedom Defense Initiative v. Washington Metropolitan Area Transit Authority*, 901 F.3d 356, (D.C. Cir. 2018), where "'[t]he intervening event . . . is of the [defendant]'s own doing' [the D.C. Circuit] will examine whether the defendant's voluntary cessation of the challenged action truly renders the case moot."  *Am. Freedom*, 901 F.3d at 362 (quoting *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012)).  Generally, it does not unless "'(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'" *Am. Freedom*, 901 F.3d at 362 (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 349).

Here, there is no reasonable expectation that the alleged violation will recur.  CMS has not announced any intention to reenact the previous Technical Direction Letters and has replaced the policy articulated therein with an instruction to the MACs to institute the standard claims review process.  Any conjecture that CMS would revive its previous Letters is entirely speculative and is insufficient to forestall dismissal because of mootness.  *See Akiachak Native Cmty.*, 827 F.3d at 106.  As the *Akiachak Native Cmty.* court found:

> "Although the voluntary repeal of a regulation does not moot a case if there is reason to believe the agency will reinstitute it, 'the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a

> reasonable expectation of recurrence exists' absent 'evidence indicating that the
> challenged [rule] likely will be reenacted.'  No such evidence exists here.").

*Id.* (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 349).

Likewise, interim events have completely eradicated the effects of the alleged violation.
The MACs have removed the claims processing system edits that immediately rejected claims for
Plaintiff's products and are now following the March 25, 2022, Technical Direction Letter under
which they process claims pursuant to their usual procedures.  There is therefore no additional
practical relief the Court could afford Plaintiff.  Even if Plaintiff's lawsuit requested that this Court
order CMS or the MACs to make payment for its products (and it does not), this Court lacks
jurisdiction to make such an order and such an order would be unlawful.  As a matter of law, claims
under the Medicare program may only be paid if they meet certain statutory requirements which
are not at issue in this litigation and cannot be resolved in this litigation.

Federal courts may only decide "'actual, ongoing controversies' and a federal court has no
'power to render advisory opinions [or] . . . 'decide questions that cannot affect the rights of
litigants in the case before them.'"  *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Honig v.
Doe,* 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (in turn quoting
*North Carolina v. Rice,* 404 U.S. 244, 246 (1971))).  A court must "refrain from deciding" cases
where "'events have so transpired that the decision will neither presently affect the parties' rights
nor have a *more-than-speculative* chance of affecting them in the future.'"  *Nat'l Black Police
Ass'n*, 108 F.3d at 349 (quoting *Clarke v. United States,* 915 F.2d 699, 701 (D.C. Cir. 1990) (en
banc) (in turn quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 575 (D.C. Cir. 1990))).
Here, any chance that the allegedly wrongful behavior could be expected to recur is nothing more-
than-speculative.  The voluntary cessation doctrine therefore supports dismissal on mootness
grounds.

Plaintiff spills much ink arguing that CMS has usurped the regulatory authority of FDA, *See, e.g.*, Compl. ¶¶ 68, 99, 109, but that issue is a red herring and not relevant to the disposition of this lawsuit.  According to Plaintiff, CMS has impermissibly determined that Plaintiff's products are not appropriately regulated under Public Health Service Act section 361 and its regulation at 21 C.F.R. § 1271.  Compl. ¶ 109.  The Technical Direction Letters, however, state that the basis for denying claims for amniotic and placental tissue injections is because they "have not been proven safe or effective," not because there is a question about the appropriate regulation of the products.

As Plaintiff acknowledges, CMS and FDA are responsible for executing different statutory schemes.  *See supra* at 3-6 (description of the Medicare program and 7-9 for a description of FDA's relevant regulatory authority).  CMS's determination of whether a product billed to Medicare is safe and effective under the Medicare statute, 42 U.S.C. §§ 1395ff(a)(1), 1395hh, stands separate and apart from FDA's authority under the Public Health Safety Act (42 U.S.C. § 264) to regulate regenerative medicine products.  Clearly and obviously in some instances one agency's actions may have an impact on the activities of the other.  But the mere fact that both CMS and FDA have authority to regulate a common classification of products or the activities of a common manufacturer does not inherently mean that either agency is acting unlawfully.  Plaintiff provides no legal authority to show otherwise and Defendants are aware of none.

Plaintiff's allegation that CMS's Technical Direction Letters and FDA's safety notices use similar language does not change the basis for action stated in the Technical Direction Letters. Further, no legal authority prevents CMS from using FDA's safety notices as part of the grounds for it taking action with regards to its own regulatory sphere.  CMS's consideration of, and citation to, FDA's safety notices was by no means inappropriate or unlawful.

A declaratory judgement from this Court that Plaintiff's product is a 361 product would not address CMS's stated reason for issuing the Technical Direction Letters and therefore could not lead to the relief that Plaintiff seeks.  This would be true even if the Letters had not been rescinded and the case rendered moot.

## II.     THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION

Plaintiff's Complaint alleges that the Court's jurisdiction is based on federal question jurisdiction, 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 702, the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, and the Mandamus Act, 28 U.S.C. § 1361.  Compl. ¶ 23.  However, even if this case was not moot, none of these would serve as a basis for the Court jurisdiction and, indeed, the Medicare Statute actually precludes the Court's jurisdiction.

### A.     The Medicare Statute, 42 U.S.C. §§ 405(h) and 1395ii, Precludes Federal Question Jurisdiction

Even if its case was not moot Plaintiff still cannot establish this Court's jurisdiction under the federal question statute, 28 U.S.C. § 1331, because the Medicare statute, 42 U.S.C. §§ 405(h) and 1395ii, expressly bars federal question jurisdiction.  *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (holding that § 405(h) bars § 1331 jurisdiction over a Medicare fiscal intermediary's denial of a provider's request for reopening, even though the reopening denial is also not reviewable under the Medicare statute or the federal mandamus statute).  The Medicare statute is unequivocal in its bar of federal question jurisdiction.  Section 405(h) specifically applies to "any claim arising under" the Medicare statute.

As the Supreme Court has held repeatedly, a "claim 'arises under' the Medicare Act within the meaning of this provision . . . [if] 'both the standing and the substantive basis for the presentation' of the claim are the Medicare Act."  *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (quoting *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)).  Here, Plaintiff's

"standing" is clearly predicated on the Medicare statute, for it seeks an order from this Court rescinding a Medicare payment instruction.  Compl. ¶¶ 115, 117, 122.

Moreover, the Medicare statute plainly supplies "'the substantive basis for the presentation' of the claim[s]" at issue.  *Your Home,* 525 U.S. at 456 (citation omitted).  As explained above, Medicare Part B allows coverage of "medical and other health services."  42 U.S.C. §§ 1395k(a)(l), 1395m(j)(5), 5x(s)(1), (2)(A), (6), (8), & (9).   Plaintiff itself argues that Defendants' Technical Direction Letters limit its ability to receive Medicare reimbursement. Compl. ¶¶ 101, 102.  Indeed, the two now rescinded Letters' entire *raison d'etre* was to instruct the MACs how to handle certain Medicare reimbursement claims.  Without a doubt this case arises under the Medicare statute.

Plaintiff also argues that its claims arise under the APA, the All Writs Act, and the Due Process Clause of the Fifth Amendment.  Compl. ¶ 23.  The Supreme Court has held, however, that § 405(h)'s bar of federal question jurisdiction is "sweeping and direct," *Weinberger v. Salfi,* 422 U.S. 749, 757 (1975), and encompasses "all 'claims arising under the' Medicare Act."  *Ringer*, 466 U.S. at 615 (citation omitted).  Thus, as this Circuit concluded, under the "*Salfi-Ringer*" line of precedent, § 405(h) requires that every aspect of any "claim arising under" the Medicare statute—whether constitutional, APA, substantive, or procedural—must be "fed through the administrative-judicial system as parts of disputes over actual amounts" of payment.  *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130, 1134 (D.C. Cir. 1992).

In the Supreme Court's most recent, comprehensive review of the *Salfi-Ringer* line of authority, the Court explained:

Those cases themselves foreclose distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact

specific" nature of the challenge, the "collateral" versus "noncollateral" nature of
the issues, or the "declaratory" versus "injunctive" nature of the relief sought.

*Shalala v. Ill. Council on Long Term Care. Inc.*, 529 U.S. 1, 14 (2000).  The Court also rejected

"a distinction that limits the scope of § 405(h) to claims for monetary benefits" as distinct from

claims that "dispute agency policy determinations, or . . . involve the application, interpretation,

or constitutionality of interrelated regulations or statutory provisions." *Id.*  Thus, the Court

concluded that the Medicare statute's comprehensive remedial scheme "demands the 'channeling'

of virtually all legal attacks" on Medicare matters "through the agency" before they can be heard

in federal court under the statute's own grant of subject matter jurisdiction over a final decision of

the Secretary after a hearing.  *Id.* at 13.

There is simply no question that Plaintiff seeks Medicare reimbursement: the only reason

for Plaintiff to seek a reversal or vacatur of the challenged payment policy is because it wants to

ensure a stream of Medicare funding so that it can sell its products.  Compl. ¶¶ 101, 102.  Plaintiff's

very claims of harm are dependent on its allegation that Medicare was not paying for its product.

*Id.*  Regardless of whether Plaintiff's challenge to the Technical Direction Letters is deemed

"procedural," constitutional, or assigned some other label, Plaintiff's allegations are "inextricably

intertwined" with its desire for Medicare reimbursement, and thus § 405(h) bars federal question

jurisdiction and requires that a final decision first be channeled through administrative appeals on

all aspects of its "claims arising under" the Medicare statute.  *Ringer*, 466 U.S. at 614.

Because Plaintiff's claims are, at heart, Medicare benefit claims, the Medicare statute

provides for administrative and judicial review.  42 U.S.C. § 1395ff(a)(l)(B) (an "initial

determination of the amount of benefits available . . . under such parts" is subject to administrative

and judicial review); *see also* 42 C.F.R. § 405.920(b) (same).  The gravamen of the Complaint is

Plaintiff's request for this Court to hold unlawful CMS's instruction to deny claims for payment

for amniotic and placental injections on the grounds that doing so will make its products eligible for Medicare reimbursement.  Compl. ¶ 101, 102.  If the challenged policy was not already rescinded, then the statute would provide for administrative and judicial review of such claims, which "at bottom [raise] a claim that they should be paid" by Medicare.  *Ringer*, 466 U.S. 614.

Given that Plaintiff seeks "a monetary benefit from an agency" and "challenges the lawfulness of th[e] denial" of claims for payment for its products, federal question jurisdiction is "plainly" barred, "irrespective of whether [it] challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." *Ill. Council*, 529 U.S. at 10; *accord Ringer*, 466 U.S. at 615, 621; *Salfi*, 442 U.S. at 760-61.

Plaintiff, however, argues that, as a manufacturer, it cannot appeal or administratively challenge a CMS policy, which will result in no review of actions involved in this lawsuit at all. Compl. ¶ 93.  Plaintiff is incorrect.  It is true that the Supreme Court has recognized one narrow exception to § 405(h)'s prohibition of federal question jurisdiction for disputes pertaining to the Medicare program, but that limited exception has no bearing on this particular circumstance.  In *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 668 (1986), an association of physicians brought statutory and constitutional challenges to a Medicare regulation setting forth the "methods" for determining the amount of Part B payment for various physician services.  At that juncture, the Medicare statute provided for only limited "carrier" review of Part B benefit claims, and the Supreme Court had previously ruled that the statute precluded judicial review of the "amount of Part B awards." *United States v. Erika Inc.,* 456 U.S. 201, 208 (1982).  In *Michigan Academy*, 476 U.S. at 676, 681, the Supreme Court held that Congress did not preclude judicial "review of the method by which Part B awards are computed," so allowing federal question jurisdiction would ensure a judicial forum for colorable constitutional claims.

Then, in *Illinois Council*, the Supreme Court limited the *Michigan Academy* exception to § 405(h)'s bar of federal question jurisdiction.  The Court "read *Michigan Academy* as holding that § 1395ii does not apply § 405(h) [only] where application of § 405(h) would not simply channel review through the agency, but would mean no review at all."  *Ill. Council*, 529 U.S. at 19.  The Court emphasized, however, that the scope of the exception to Section 405(h)'s jurisdictional preclusion is very limited:

> [W]e do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case. Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review.

*Id*. at 22-23 (emphasis in original) (citation omitted).

Plaintiff's claims do *not* fall within the limited exception to § 405(h)'s jurisdictional bar that was recognized in *Illinois Council* because there would not be *complete* preclusion of judicial review.  Even if a particular plaintiff is unable to exhaust its claims, the channeling requirement "nonetheless applies" when an adequate proxy could raise the claims. *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 712 (D.C. Cir. 2011); *see also Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 817-18 (D.C. Cir. 2005); *Helomics, Inc. v. Novitas*, Civ. A. No. 15-1667, 2016 WL 374314, at *2 (W.D. Pa. Feb. 1, 2016) ("It matters not whether Plaintiff has an individual right to [administrative review of a Medicare claim].  So long as third parties have an aligned incentive, channeling is required.") (citing *Physicians Hosps. of Am. v. Sebelius*, 691 F.3d 649, 658-59 (5th Cir. 2012)); *Nat'l Athletic Trainers' Ass'n v. Dep't of Health & Human Servs.*, 455 F.3d 500, 507-08 (5th Cir. 2006); *Vertos Med., Inc. v. Novitas Sols., Inc.,* Civ. A. No. 12-3224, 2012 WL 5943542, at *6 (S.D. Tex. Nov. 27, 2012) ("the possibility of review is not completely

precluded as long as third parties such as physicians or beneficiaries, have the ability and incentive to access . . . administrative review").

Here, the Medicare administrative review process is available to Medicare providers, suppliers, and beneficiaries and their interests are not contrary to those of Regenative. Accordingly, there is "no complete preclusion of judicial review" under the Medicare statute—the channeling requirement addressed in *Illinois Council* applies and federal question jurisdiction is precluded. *Council for Urological Interests*, 668 F.3d at 712-13.

**B.     The APA, the Declaratory Judgement Act, the All Writs Act, and the Mandamus Act Fail to Provide a Basis for Jurisdiction**

In addition to federal question jurisdiction, Plaintiff alleges that the Court's jurisdiction in this case relies on four bases—the APA, the All Writs Act, the Declaratory Judgment Act, and the Mandamus Act. Compl. ¶ 23.  Contrary to the Plaintiff's assertions, it is well established that the APA, the All Writs Act, and the Declaratory Judgment Act do not provide an independent basis for jurisdiction.  *See Califano v. Sanders,* 430 U.S. 99, 107–07 (1977) (holding, in action brought under the Social Security Act, that "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions"); *Colorado Heart Inst., LLC v. Johnson*, 609 F. Supp. 2d 30, 34 (D.D.C. 2009) (holding, in action brought under Medicare statute, that "Section 702 of the APA does not provide an independent basis for jurisdiction"); *Lovitky v. Trump*, 918 F.3d 160, 161 (D.C. Cir. 2019) (holding that "§ 2201 (declaratory judgment) 'is not an independent source of federal jurisdiction'"); *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 ("the All Writs Act cannot enlarge a court's jurisdiction," quoting 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02 (3d ed. 1998)).

Mandamus jurisdiction is also not available here.  The remedy of mandamus is 'one of the most potent weapons in the judicial arsenal.'"  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367,

380 (2004).  Due to the potential conflict between the branches of government engendered by use of this remedy, courts have limited its application to "only . . . the clearest and most compelling cases."  *13th Reg'l Corp. v. Dep't of Interior,* 654 F.2d 758 (D.C. Cir. 1980).

For this Court to properly exercise its mandamus jurisdiction, Plaintiff must show that "(1) [it] has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).  The party seeking mandamus has the burden of establishing each element for relief. *Ringer*, 466 U.S. at 616; *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) ("those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief.") (*en banc*) (emphasis added).  "[M]andamus will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."  *13th Reg'l Corp.*, 654 F.2d at 760.  Significantly, even if a plaintiff could establish the three legal elements for mandamus relief, "a court may grant relief *only* when it finds '*compelling equitable grounds.*'"  *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.D.C. 2005) (internal quotation omitted) (emphasis added); *see also In re Cheney*, 406 F.3d at 729.

Plaintiff's claims fail to meet any of the prerequisites for mandamus relief, much less all of them.  Plaintiff does not, and cannot, point to specific statutes or other provisions that impose on the Secretary clear, non-discretionary duties to provide payment for Regenative's products.  In fact, Plaintiff's Complaint is entirely devoid of citation to any statutory and regulatory provisions that it alleges govern payment of its products.  Plaintiff's request for mandamus relief also fails the third criterion, which requires there be no other adequate remedy available.  Here, the Medicare

statute and regulations provide Medicare beneficiaries, providers, and suppliers with ample means of pursuing relief.  *See* 42 U.S.C. 405(g), 1395ff; 42 C.F.R. Part 405, Subpart I.

Finally, the D.C. Circuit has made clear that the "equitable" case for mandamus relief must be just as "clear and compelling" as the "legal" case.  *13th Reg'l Corp.*, 654 F.2d at 760.  But there is no equitable case for mandamus jurisdiction here, where Defendants have already provided Plaintiff with the relief it has requested.

## III.   THE MACS SHOULD BE DISMISSED FROM THIS CASE

The Secretary is the real party in interest in this litigation and the MACs should therefore be dismissed from the case.  While Congress intended for MACs to play a "considerable role" in the Medicare reimbursement program by "carrying on for [the Secretary] the governmental administrative responsibilities imposed by the bill," S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S. Code Cong. & Admin. News 1943, 1992-95, it also has understood that the "Secretary . . . would be the real party in interest in the administration of the program." *Id*. As the U.S. Supreme Court has acknowledged, the Secretary's regulations expressly state that the Secretary, not the MACs, is the real party in interest in any litigation involving the Medicare program:

> *Indemnification of intermediaries and carriers*. Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of CMS and *CMS is the real party of interest in any litigation involving the administration of the program.*

42 C.F.R. § 421.5 (emphasis added); *United States v. Erika, Inc*., 456 U.S. 201, 206 n.4 (1982).

Most courts that have considered the issue have found that the Secretary is the real party in interest and dismissed contractors from actions that name as defendants both the Secretary and the contractors.  *See, e.g., Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co*., 485 F.2d 1073, 1074-75 (D.C. Cir. 1973) (finding diversity jurisdiction unavailable in suit against Medicare

contractor for unpaid benefits because "[t]he [Medicare Act] and regulations . . . make it clear that [the contractor] is an agent for the Government."); *Swedish Am. Hosp. v. Sebelius*, 691 F.Supp.2d 80, 86 (D.D.C. 2010) (citing *Pine View Gardens* and holding that fiscal intermediaries were immune from suit because they are "officers and employees of the government. . . . "); *Anderson v. Occidental Life Ins. Co*., 727 F.2d 855, 856-57 (9th Cir. 1984) ("[t]he United States is the real party in interest in actions against Medicare carriers [MAC predecessors] because recovery would come from the federal treasury"); *Peterson v. Weinberger*, 508 F.2d 45, 51-52, n.7 (5th Cir. 1975) (United States is the real party in interest in physician's suit against intermediary [MAC predecessor]); *Pavano v. Shalala*, 95 F.3d 147,148 (2d Cir. 1996) ("[b]ecause the carriers are authorized agents of . . . the Department of Health and Human Services, *see* 42 U.S.C. § 1395u(a), the Secretary is the real party in interest here, *see* 42 C.F.R. § 421.5(b).").

In this case it was CMS, acting on behalf of the Secretary, that issued the Technical Direction Letters that Plaintiff here challenges.  CMS also determines what, if any, amount shall be paid to each health care entity and when Medicare payments are made.  *See*, *e.g*., 42 U.S.C. § 1395g(a) ("The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time as the Secretary believes appropriate.").  All of Plaintiff's allegations against the MACs involve actions that the MACs took pursuant to their contracts with the Secretary and at the direction of CMS—the MACs have no vested interest in Medicare funds or whether Plaintiff's products are eligible for Medicare payment.

Moreover, the Medicare statute also provides immunity to the MACs against claims alleging mis-payment of Medicare services, except in the case of "reckless disregard" or "intent to defraud," and offers indemnification of the MACs sued for any matter "arising from or relating

directly to the claims administration process." 42 U.S.C. § 1395kk-1(d)(3) and (4); *see also Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) ("Fiscal intermediaries, when acting as agents for [CMS], are also protected by sovereign immunity."); *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir. 1977) (same); *Grp. Health, Inc. v. Blue Cross Ass'n*, 739 F. Supp. 921, 932-33 (S.D.N.Y. 1990) (Secretary is the real party in interest and, as such, fiscal intermediary is entitled to sovereign immunity with respect to claims based on negligent misrepresentations), *cited with approval in Pani v. Empire Blue Cross/Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998).  Limited liability and indemnification for the MACs exists because they carry out governmental functions and because the Secretary is the real party in interest in litigation involving the administration of Medicare. 42 C.F.R. § 421.5(b). Therefore, the MACs enjoy immunity from liability, except when their actions are made with reckless disregard or an intent to defraud, claims not alleged in the Plaintiff's complaint.  The MACs immunity from suit means that Plaintiff has not alleged a claim for which relief can be granted against them, and Plaintiff's suit against them must be dismissed. *Cf. Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 351 (3d Cir. 2012) (upholding dismissal of state tort claims for failing to state a claim because "[defendants], as Medicare contractors, are entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties."); *Midland Psychiatric Assoc., Inc. v. United States*, 145 F.3d 1000, 1005 (8th Cir. 1998); *Marsaw v. Thompson*, 133 Fed. App'x. 946, 948 (5th Cir. 2005) (no private right of action against private entities, such as Medicare contractors, "that engage in alleged constitutional deprivations while acting under color of federal law.").

Given the undisputed legal status of the Secretary as the real party in interest in this matter, and the fact that the MACs have immunity from suit, there is no practical reason or legal basis to maintain the MACs as parties in this litigation and they should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Verified Complaint for lack of

subject-matter jurisdiction under Rule 12(b)(1).

Dated: June 21, 2022
       Washington, DC

                          Respectfully submitted,

                          MATTHEW M. GRAVES, D.C. Bar #481052
                          United States Attorney

                          BRIAN J. HUDAK
                          Chief, Civil Division

                          By: /s/ *Diana V. Valdivia*
                                DIANA V. VALDIVIA, D.C. Bar #1006628
                                Assistant United States Attorney
                                601 D Street, N.W.
                                Washington, D.C. 20530
                                T: (202) 252-2545
                                diana.valdivia@usdoj.gov

                          *Counsel for Defendants*

*Of Counsel*:

    SAMUEL R. BAGENSTOS
     *General Counsel*

    JANICE L. HOFFMAN
     *Associate General Counsel*

    SUSAN MAXSON LYONS
     *Deputy Associate General Counsel for Litigation*

    JULLIA CALLAHAN BRADLEY
    *Attorney*

    *U.S. Department of Health and Human Services*

30