UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ROW 1 INC., doing business as
REGENATIVE LABS,

        *Plaintiff,*

    v.

XAVIER BECERRA,
Secretary of Health and Human Services, *et al.*,

        *Defendants*.

Civil Action No. 22-0718 (APM)

---

**MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................…...................2

BACKGROUND...........................................................................…...…...........4

I.     THE MEDICARE PROGRAM..................................................….…...…...4

II.    THE PUBLIC HEALTH SERVICE ACT....................................…......…...8

III.   THE TECHNICAL DIRECTION LETTERS.......................…...............13

LEGAL STANDARD....................................................................…..........14

ARGUMENT...................................................................................…...........15

I.     THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION.....15

     A.    Regenative Has Not Obtained a Final Decision of the Secretary as Required For Judicial Review Under 42 C.F.R. § 405(g)......................15

     B.    The APA, the Declaratory Judgement Act, the All Writs Act, and the Mandamus Act Fail to Provide a Basis for Jurisdiction...............…..........21

     C.    Plaintiff's Claims Are Not Ripe.............................................................23

II.    CMS RESCINDED THE MEDICARE PAYMENT INSTRUCTION THAT PLAINTIFF CHALLENGES IN THIS ACTION SO THOSE ALLEGATIONS ARE MOOT...............................................................................…......................26

     A.    Rescission of the Challenged Regulation Moots Plaintiff's Claims for Injunctive And Declaratory Relief.....................................................…..26

     B.    There is No Reasonable Expectation that the Alleged Violation Will Recur and Interim Relief Has Completely Eradicated the Effects of the Alleged Violation...................................................................…...........................29

III.   THE MACS SHOULD BE DISMISSED FROM THIS CASE...........................32

CONCLUSION...........................................................................…..................36

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967).................................................................................................. 23

*Akiachak Native Cmty. v. Dep't of Interior*,
   827 F.3d 100 (D.C. Cir. 2016).................................................................... 28, 29, 30

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013).................................................................................................... 26

*Am. Chiropractic Ass'n v. Leavitt*,
   431 F.3d 812 (D.C. Cir. 2005)................................................................................. 20

*American Freedom Defense Initiative v. Washington Metropolitan Area Transit Authority*,
   901 F.3d 356, (D.C. Cir. 2018)................................................................................ 29

*American Hosp. Ass'n v. Azar*,
   895 F.3d 822 (D.C. Cir. 2018)........................................................................... 16, 17

*Anderson v. Occidental Life Ins. Co.*,
   727 F.2d 855 (9th Cir. 1984).................................................................................... 33

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997).................................................................................................... 27

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015).................................................................................... 15

*Association of Am. Med. Colls. v. Califano*,
   569 F.2d 101 (D.C. Cir. 1977)................................................................................. 18

*Belmont Abbey Coll. v. Sebelius*,
   878 F. Supp. 2d 25 (D.D.C. 2012)........................................................................... 23

*Bowen v. Michigan Academy of Family Physicians*,
   476 U.S. 667 (1986).................................................................................................. 19

*Califano v. Sanders*,
   430 U.S. 99 (1977).................................................................................................... 21

*Center for Science in the Public Interest ("CSPI") v. Regan*,
   727 F.2d 1161 (D.C. Cir. 1984)............................................................................... 28

*Chafin v. Chafin*,
   568 U.S. 165 (2013).................................................................................................. 26

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004).................................................................................................. 22

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (1992)...................................................................................................... 26

*Clarke v. United States*,
   915 F.2d 699 (D.C. Cir. 1990).................................................................................. 31

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999).................................................................................................. 22

*Colorado Heart Inst., LLC v. Johnson*,
   609 F. Supp. 2d 30 (D.D.C. 2009)........................................................................... 21

*Commodity Futures Trading Comm'n v. Nahas*,
   738 F.2d 487 (D.C. Cir. 1984).................................................................................. 15

*Council for Urological Interests v. Sebelius,*
  668 F.3d 704 (D.C. Cir. 2011) ................................................................ 20, 21
*Finca Santa Elena, Inc. v. Army Corps of Eng'rs,*
  873 F. Supp. 2d 363 (D.D.C. 2012) .............................................................. 23
*Friends of Animals v. Bernhardt,*
  961 F.3d 1197 (D.C. Cir. 2020) ............................................................. 27, 28
*Full Value Advisors, LLC v. SEC,*
  633 F. 3d 1101 (D.C. Cir. 2011) ............................................................ 23, 25
*Grp. Health, Inc. v. Blue Cross Ass'n,*
  739 F. Supp. 921 (S.D.N.Y. 1990) ............................................................... 34
*Heckler v. Ringer,*
  466 U.S. 602 (1984) ........................................................................... passim
*Helomics, Inc. v. Novitas,*
  Civ. A. No. 15-1667, 2016 WL 374314 (W.D. Pa. Feb. 1, 2016) ........................... 20
*Herbert v. Nat'l Acad. of Scis.,*
  974 F.2d 192 (D.C. Cir. 1992) ..................................................................... 15
*Honig v. Doe,*
  484 U.S. 305 (1988) ................................................................................. 30
*In re Cheney,*
  406 F.3d 723 (D.C. Cir. 2005) ..................................................................... 22
*In re Medicare Reimbursement Litig.,*
  414 F.3d 7 (D.D.C. 2005) ........................................................................... 22
*Initiative & Referendum Inst. v. U.S. Postal Serv.,*
  685 F.3d 1066 (D.C. Cir. 2012) ................................................................... 29
*Jerome Stevens Pharm., Inc. v. FDA,*
  402 F.3d 1249 (D.C. Cir. 2005) ................................................................... 15
*Joorabi v. Pompeo,*
  Civ. A. No. 20-0108 (RCL), 2020 WL 2527209 (D.D.C. May 17, 2020) ............. 14, 15
*Kaiser v. Blue Cross of Cal.,*
  347 F.3d 1107 (9th Cir. 2003) ..................................................................... 34
*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ............................................................................. 14, 15
*Lovitky v. Trump,*
  918 F.3d 160 (D.C. Cir. 2019) ..................................................................... 21
*Marsaw v. Thompson,*
  133 Fed. App'x. 946 (5th Cir. 2005) ............................................................. 35
*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ................................................................................. 16
*Matranga v. Travelers Ins. Co.,*
  563 F.2d 677 (5th Cir. 1977) ...................................................................... 34
*Midland Psychiatric Assoc., Inc. v. United States,*
  145 F.3d 1000 (8th Cir. 1998) ..................................................................... 34
*Mills v. Green,*
  159 U.S. 651 (1895) ................................................................................. 26
*Mitchell v. Occidental Life Ins., Medicare,*
  619 F.2d 28 (9th Cir. 1980) ........................................................................ 33

*Murphy v. Hunt*,
  455 U.S. 478 (1982) ............................................................................................ 26

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*,
  140 S. Ct. 1525 (2020) ....................................................................................... 26

*National Kidney Patients' Ass'n v. Sullivan*,
  958 F.2d 1127 (D.C. Cir. 1992) .................................................................... 17, 21

*Nat'l Athletic Trainers' Ass'n v. Dep't of Health & Human Servs.*,
  455 F.3d 500 (5th Cir. 2006) ............................................................................. 20

*Nat'l Black Police Ass'n v. District of Columbia*,
  108 F.3d 346 (D.C. Cir. 1997) .............................................................. 27, 29, 30

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*,
  694 F.3d 340 (3d Cir. 2012) .............................................................................. 34

*North Carolina v. Rice*,
  404 U.S. 244 (1971) ........................................................................................... 30

*Ohio Forestry Association, Inc. v. Sierra Club*,
  523 U.S. 726 (1998) ..................................................................................... 24, 25

*Pani v. Empire Blue Cross/Blue Shield*,
  152 F.3d 67 (2d Cir. 1998) ................................................................................ 34

*Pavano v. Shalala*,
  95 F.3d 147 (2d Cir. 1996) ................................................................................ 33

*Peterson v. Weinberger*,
  508 F.2d 45 (5th Cir. 1975) ............................................................................... 33

*Phillips v. McLaughlin*,
  854 F.2d 673 (4th Cir. 1988) ............................................................................. 29

*Physicians Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) ............................................................................. 20

*Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*,
  485 F.2d 1073 (D.C. Cir. 1973) ........................................................................ 33

*Power v. Barnhart*,
  292 F.3d 781 (D.C. Cir. 2002) .......................................................................... 22

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) ........................................................................................... 30

*Reg'l Corp. v. Dep't of Interior*,
  654 F.2d 758 (D.C. Cir. 1980) .................................................................... 22, 23

*RICU LLC v. HHS.*,
  22 F.4th 1031 (D.C. Cir. 2022) ......................................................................... 21

*Shalala v. Illinois Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000) ........................................................................... 16, 17, 20, 31

*Smith v. Berryhill*,
  139 S. Ct. 1765 (2019) ....................................................................................... 16

*Swedish Am. Hosp. v. Sebelius*,
  691 F. Supp. 2d 80 (D.D.C. 2010) .................................................................... 33

*Texas v. United States*,
  523 U.S. 296 (1998) ........................................................................................... 25

*Three Lower Ctys. Cmty. Health Servs., Inc. v. U.S. HHS*,
  317 F. App'x 1 (D.C. Cir. 2009) ........................................................................ 18

*Transwestern Pipeline Co. v. FERC,*
    897 F.2d 570 (D.C. Cir. 1990) ................................................................... 31
*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
    513 U.S. 18 (1994) ...................................................................................... 26
*United States v. Erika Inc.,*
    456 U.S. 201 (1982) ............................................................................... 19, 33
*Vertos Med., Inc. v. Novitas Sols., Inc.,*
    Civ. A. No. 12-3224, 2012 WL 5943542 (S.D. Tex. Nov. 27, 2012) ....................... 20
*Weinberger v. Salfi,*
    422 U.S. 749 (1975) .................................................................................... 21
*Your Home Visiting Nurse Servs., Inc. v. Shalala,*
    525 U.S. 449 (1999) .................................................................................... 18

## Statutes

5 U.S.C. § 702 .......................................................................................... 15
21 U.S.C. § 393(b) ..................................................................................... 8
21 U.S.C. §§ 301 *et seq.* ............................................................................ 8
21 U.S.C. § 321 ........................................................................................ 11
21 U.S.C. § 351 ........................................................................................ 11
21 U.S.C. § 352 ........................................................................................ 11
21 U.S.C. § 353 ........................................................................................ 11
28 U.S.C. § 1331 .................................................................................... 4, 15
28 U.S.C. § 1361 ...................................................................................... 15
28 U.S.C. § 2201 ...................................................................................... 15
28 U.S.C. § 2202 ...................................................................................... 15
42 U.S.C. § 202 ......................................................................................... 9
42 U.S.C. § 262 ......................................................................................... 8
42 U.S.C. § 262(i) ...................................................................................... 9
42 U.S.C. § 264 .............................................................................. 9, 10, 31
42 U.S.C. § 264(a) ..................................................................................... 9
42 U.S.C. § 405(g) ............................................................................. passim
42 U.S.C. § 405(h) .................................................................. 8, 15, 17, 18
42 U.S.C. § 1302(a) .................................................................................... 4
42 U.S.C. § 1395 ........................................................................................ 4
42 U.S.C. § 1395ff ............................................................................... 3, 5, 7
42 U.S.C. § 1395ff(a)(3) .............................................................................. 8
42 U.S.C. § 1395ff(a)(l) ............................................................................... 7
42 U.S.C. § 1395ff(a)(1) .......................................................................... 5, 31
42 U.S.C. § 1395ff(b)(1)(A) .......................................................................... 8
42 U.S.C. § 1395ff(b)(1)(B) .......................................................................... 7
42 U.S.C. § 1395ff(b)(l)(A) .......................................................................... 8
42 U.S.C. § 1395ff(d)(2) .............................................................................. 8
42 U.S.C. § 1395ff(f)(2)(B) ........................................................................... 6
42 U.S.C. § 1395g(a) ................................................................................. 33
42 U.S.C. § 1395h(a) ................................................................................. 16

42 U.S.C. § 1395k ....................................................................................................... 5
42 U.S.C. § 1395k(1)(1) ............................................................................................. 4
42 U.S.C. § 1395k(a)(l) ............................................................................................. 18
42 U.S.C. § 1395kk-1 ................................................................................................ 6
42 U.S.C. § 1395kk-1(d)(3) ...................................................................................... 34
42 U.S.C. § 1395u(a) ............................................................................................. 6, 33
42 U.S.C. § 1395y(a)(1)(A) ................................................................................. passim
42 U.S.C. § 13951(e) ................................................................................................. 7

## Regulations

21 C.F.R. § 1271 .......................................................................................... 10, 11, 31
21 C.F.R. § 1271.10(a) .......................................................................................... 11, 12
21 C.F.R. § 1271.15 ................................................................................................. 10
21 C.F.R. § 1271.20 ........................................................................................... 10, 11
21 C.F.R. § 1271.3(d) .............................................................................................. 10
42 C.F.R. § 400.202 ................................................................................................. 5
42 C.F.R. § 405 ...................................................................................................... 23
42 C.F.R. § 405(g) ............................................................................................... i, 15
42 C.F.R. § 405.1002 ............................................................................................... 8
42 C.F.R. § 405.1060(a)(4) ....................................................................................... 5
42 C.F.R. § 405.1100 ............................................................................................... 8
42 C.F.R. § 405.1136 ............................................................................................... 8
42 C.F.R. § 405.906(a)(2) ......................................................................................... 7
42 C.F.R. § 405.920 ................................................................................................. 7
42 C.F.R. § 405.940 ................................................................................................. 8
42 C.F.R. § 405.960 ................................................................................................. 8
42 C.F.R. § 410 ....................................................................................................... 4
42 C.F.R. § 411.15(k)(1) ........................................................................................... 5
42 C.F.R. § 421.400 ................................................................................................. 6
42 C.F.R. § 421.5 ................................................................................................... 33
42 C.F.R. § 421.5(b) ....................................................................................... 6, 33, 34
42 C.F.R. § 424.5(a)(6) ............................................................................................. 7
45 C.F.R. § 160.103 ................................................................................................. 7
45 C.F.R. § 162.1000(a) ........................................................................................... 7
45 Fed. Reg. 56,911 (Nov. 19, 1981) ....................................................................... 4
62 Fed. Reg. 9721 (Mar. 4, 1997) ........................................................................... 10
63 Fed. Reg. 26745 (Proposed) ................................................................................ 9
66 Fed. Reg. 5447 (Jan. 19, 2001) .................................................................... 10, 11
66 Fed. Reg. 58,788 (Nov. 23, 2001) ....................................................................... 5
69 Fed. Reg. 29786 (May 25, 2004) ....................................................................... 10
69 Fed. Reg. 68612 (Nov. 24, 2004) ....................................................................... 10

By and through undersigned counsel, Defendants: Xavier Becerra, in his official capacity as the Secretary of the United States Department of Health and Human Services ("the Secretary"); Chiquita Brooks LaSure, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services ("CMS"); CMS; and Noridian Healthcare Solutions, LLC; Wisconsin Physicians Service Insurance Corporation; Novitas Solutions, Inc.; National Government Services Inc.; CGS Administrators, LLC; Palmetto GBA, LLC; and First Coast Service Options, Inc., (collectively "Defendants"), respectfully submit this Memorandum of Points and Authorities in support of their motion to dismiss Plaintiff Row 1, Inc., d/b/a Regenative Lab' ("Regenative") Amended Verified Complaint (ECF No. 19).

The Amended Verified Complaint should be dismissed because this Court lacks subject matter jurisdiction.  Congress has conferred federal courts with jurisdiction over such challenges only after the claimant first presents the issue to the agency in the context of a specific claim for payment and then exhausts administrative remedies.  Regenative has failed to identify a specific claim that has been presented to the agency, pressed through the administrative process, and received a final decision from the Secretary.  Because Regenative did not adhere to Medicare's channeling requirements, the Medicare statute bars this Court from hearing all of its claims.  This Court also lacks jurisdiction because the Secretary has rescinded the policy that Plaintiff challenges, so the action is moot.  Finally, Defendants Noridian Healthcare Solutions, LLC; Wisconsin Physicians Service Insurance Corporation; Novitas Solutions, Inc.; National Government Services Inc.; CGS Administrators, LLC; Palmetto GBA, LLC; and First Coast Service Options, Inc., (collectively, "the MACs" or "MACs"), as Medicare Administrative Contractors enjoy immunity from suit and are not the real parties in interest in this litigation.  They should be dismissed from the case.

## INTRODUCTION

In this case Plaintiff Regenative, Inc., challenges a now-rescinded Medicare payment policy that required the MACs to apply an automatic and blanket payment denial for certain uses of products containing human cells, tissues, or cellular or tissue-based products ("HCT/Ps"). Regenative is a company that manufactures HCT/Ps.  Its products Coretext and Protext, at issue in this litigation, are made from a component of umbilical cord tissue called Wharton's Jelly. Amended Verified Complaint ¶ 1, ECF No. 19, ("Am. Compl.").  In February 2020, Regenative started selling Coretext and Protext to doctors and other health care providers who treat Medicare beneficiaries and thereafter bill Medicare for the products.  *Id.* ¶ 4.

On February 2, 2022, CMS issued a Technical Direction Letter instructing the MACs to automatically deny payments for claims of manipulated amniotic and/or placental tissue biologics for injections on the grounds that such products are unsafe and experimental.  Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated February 2, 2022, attached as Exhibit A ("Ex. A").  On February 16, 2022, CMS issued a second Technical Direction Letter to provide additional guidance to MACs on how to operationally implement the February 2, 2022, Technical Direction Letter's instructions.  Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated February 16, 2022, attached as Exhibit B.  ("Ex. B").

Plaintiff filed this action on March 15, 2022, seeking a preliminary injunction and a declaratory judgment vacating Defendant's instruction.  CMS thereafter issued a third Technical Direction Letter on March 25, 2022, rescinding the two February Letters.  Memorandum from Contracting Officer's Representatives to Medicare Administrative Contractors dated March 25, 2022, attached as Exhibit C ("Ex. C").  In addition to rescinding the February 2 and 16, 2022

Letters, the third Letter instructed the MACs to review claims for "amniotic and placental tissue product injections" to determine whether the use for which it is employed is reasonable and necessary for the treatment of the patient's condition.  *Id.*at 1.  The Secretary filed a motion to dismiss on jurisdictional grounds.  ECF No. 17.

Regenative did not directly respond to the Secretary's motion.  Instead, it filed an Amended Complaint on July 12, 2022.  ECF No. 19.  The Amended Complaint is largely a rehash of the allegations contained in the initial complaint, with the exception that Plaintiff now alleges that the Secretary's action rescinding the first two Letters is nothing more than a "faux-ceasing," because the MACs have actually ignored the third Letter and are still carrying on as before.  Am. Compl. ¶ 120.  In reality there is no "faux-cessation" because the challenged policy has been truly rescinded and is no longer being applied.  In its place, CMS has instructed the MACs to analyze these claims for amniotic and placental product injections and determine whether or not the use of Defendant's products satisfies the Medicare statute's mandate that any claim for reimbursement must be "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."  42 U.S.C. § 1395y(a)(1)(A).  *See also,* TDL-220299 at 1.

Even if Plaintiff's new allegation is true (and it is not), it does not change the jurisdictional analysis.  Any decision of one of the MACs on Medicare coverage and payment for use of Coretext and Protext is subject to administrative and judicial review under the procedures authorized by 42 U.S.C. § 1395ff.  After a claim has been exhausted, an administrative record created, and a final decision issued by the Secretary, the federal courthouse doors will be open to a claimant.  A claimant is free in the administrative proceedings to make the claim as Regenative does here that the MACs are following the policy in the now rescinded first two Letters instead of the policy

articulated in the third Letter.  Any alleged jiggery-pokery by Defendants (and there is none) will be on full display for the Court in the certified administrative record, and a claimant will lawfully get its day in court.  Because there are administrative appeal rights open to a claimant, none of the statutory bases listed by Plaintiff's Amended Complaint provides a basis for jurisdiction and the Medicare statute specifically strips jurisdiction of this case under 28 U.S.C. § 1331.  Moreover, because the MACs no longer issue blanket denials of claims there is no relief for this Court to award on the allegations in the Verified Amended Complaint and it should be dismissed on that ground as well.

Lastly, the MACs enjoy immunity from suit and are not the real party in interest in this dispute.  The MACs did nothing more than follow the directions of CMS and should be dismissed from the suit.

## **BACKGROUND**

### I.    **THE MEDICARE PROGRAM**

The Medicare statute, 42 U.S.C. § 1395 *et seq*., sets forth a federal health insurance program for the elderly and disabled.  Congress granted the Secretary broad authority to issue regulations providing for the administration of the Medicare program.  *See* 42 U.S.C. § 1302(a). CMS is the Department component that administers the Medicare program on behalf of the Secretary.  *See* 45 Fed. Reg. 56,911 (Nov. 19, 1981).  Medicare is comprised of four "parts;" this case concerns Part B, which provides enrollees with supplementary medical insurance for certain "medical and other health services," such as physician services and some durable medical equipment ("DME"), prosthetics, orthotics, and supplies.  42 U.S.C. §§ 1395k(1)(1), 1395m(j)(5), 1395x(s)(1), (2)(A), (6), (8), (9).  *See also* 42 C.F.R. Part 410.

For items and services to be covered and paid for by Medicare, they must be eligible for coverage under a defined benefit category, not be statutorily excluded from coverage, and

be reasonable and necessary.  *See id.* 42 U.S.C. §§ 1395k, 1395x, 1395y(a)(1)(A).  Congress has

given the Secretary broad authority to determine whether an item or service is covered.  *See id.*

§ 1395ff(a)(1)(B) ("The Secretary shall promulgate regulations and make initial determinations

with respect to benefits under part A or part B" regarding "the amount of benefits available" to a

Medicare beneficiary).   Medicare coverage of specific items and services is subject to an

overriding statutory requirement: "Notwithstanding any other provision of [the Medicare statute],

no payment may be made under part A or part B . . . for any expenses incurred or items or services,

which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to

improve the functioning of a malformed body member."  *Id.* §1395y(a)(1)(A); see also 42 C.F.R.

§ 411.15(k)(1).  Thus, there is no presumption that payment will be made for any item or service

in any particular case.

      The Secretary may establish "reasonable and necessary" coverage standards through

formal regulations that have the force and effect of law throughout the administrative process.

42 U.S.C. §§ 1395ff(a)(1), 1395hh.  He may also issue National Coverage Determinations[1] "with

respect to whether or not a particular item or service is covered nationally."  *Id.* § 1395ff(f)(1)(B);

*see also* 42 C.F.R. §§ 400.202, 405.1060.  Like regulations, National Coverage Determinations

are binding on Medicare contractors and adjudicators throughout the Medicare administrative

appeals process.  42 C.F.R. § 405.1060(a)(4).  In the absence of a binding national policy such as

a regulation or an National Coverage Determination, coverage decisions are "made at the

discretion of the local contractors," 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001 final rule) by

---

[1]     Plaintiff alleges that Defendants' actions ignore an applicable National Coverage
Determination that governs section 361 products.  Am. Compl. ¶ 7.  Because Plaintiff does not
provide a citation or other specific identification of the allegedly applicable National Coverage
Determination, let alone explain how it is being ignored, Defendants are unable to further respond
to the allegation.

issuing a local coverage determination, 42 U.S.C. § 1395ff(f)(2)(B), or by using a claim-by-claim adjudicatory model.

At Congress' direction, the Secretary, through CMS, has arranged for many audit and payment functions under Part B of the Medicare program to be carried out through contracts with the MACs, generally affiliates of private insurance companies.  *See* 42 U.S.C. § 1395kk-1, 42 C.F.R. § 421.400, 42 U.S.C. §§ 1395u(a) ("The administration of [Part B] shall be conducted through contracts with Medicare administrative contractors under section 1395kk-1 of this title."), 1395kk-1.  The MACs determine for the Secretary the amount of Medicare payments due to health care entities under Medicare law and under interpretive guidelines published by CMS.  *See id*. § 1395kk-1(a)(4) (these functions include "[d]etermining . . . the amount of the payments required . . . to be made to providers of services [including hospitals and other facilities], suppliers [including physicians] and individuals," making those payments, "[c]ommunicating to providers any information or instructions furnished to the [MAC] by the Secretary," and performing other functions "necessary to carry out the purposes of the Act.").  In particular, MACs are responsible for processing Medicare claims and ensuring that payments meet the coverage requirements of the Medicare statute, including that the products and services billed are reasonable and necessary for the diagnosis or treatment of an illness or injury.  42 U.S.C. §1395y(a)(1)(A).

Defendant MACs currently handle Part B claims filed by Part B suppliers, which include physicians and entities filling prescriptions for DME, prosthetics, orthotics, and supplies.  Their contracts with the Secretary, as required by regulation, contain clauses for indemnification by the Secretary for actions taken on behalf of CMS.  *See* 42 C.F.R. § 421.5(b).  "CMS is the real party of interest in any litigation involving the administration of the program."  *Id.*  CMS issues guidance, information, and clarification on a MAC's contracted workload through Technical Direction

Letters.  Technical Direction Letters cannot change the scope of the MACs' work as detailed in their contracts with CMS but MACs must comply with the instructions for performing that work routinely conveyed through a Technical Direction Letter unless the Letter states that compliance is optional.

Whenever a physician, supplier, or beneficiary files a Part B payment claim, that claim must be supported by sufficient information and documentation for the MAC to determine if the items or services are covered by Medicare and the amount of any payment deemed owing. 42 U.S.C. § 13951(e); 42 C.F.R. § 424.5(a)(6).  For medical supplies and other items of DME, prosthetics, orthotics, and supplies, the supplier's electronic claim must include a HCPCS Level II code.[2] 45 C.F.R. §§ 162.1000(a), 162.100; *see also* 45 C.F.R. §§ 160.103, 162.100 (claim must include a code identifying the service or product that was provided).

The Medicare statute and regulations afford several levels of administrative review to program beneficiaries or their assignees[3] who are dissatisfied with a MAC's reimbursement determination.  42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.906(a)(2), 405.912.  The administrative and judicial review process starts with a claim for payment of items or services.  On receipt of a claim, the MAC issues a notice of "initial determination" addressing whether the items or services are covered and meet all other payment requirements, and, if so, the amount deemed owing for such items or services. 42 U.S.C. § 1395ff(a)(l); 42 C.F.R. § 405.920.

If the claimant (i.e., the beneficiary or any assignee of the beneficiary's claim or appeal rights) is dissatisfied with some aspect of the "initial determination," that claimant may request a

---

[2]   HCPCS Level II is a standardized coding system that identifies products, services, and supplies that are not identified by the Current Procedural Technology (CPT) coding system developed by the American Medical Association.

[3]   *See* 42 U.S.C. § 1395ff(b)(1)(B) (authorizing representation by a provider or supplier).

redetermination review by the same contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940.  At the second step, if the claimant remains dissatisfied with the contractor's redetermination, that claimant may then request a "reconsideration" by a qualified independent contractor.  *See* 42 U.S.C. § 1395ff(b)(l)(A), (c); 42 C.F.R. § 405.960.

For claims that satisfy the statutory amount-in-controversy requirement, a still dissatisfied claimant may request a hearing, "as provided in [42 U.S.C. §] 405(h)," before an administrative law judge.  42 U.S.C. § 1395ff(b)(l)(A), (E) & (d)(l); 42 C.F.R. § 405.1002.  Furthermore, the ALJ's decision may be reviewed by the Medicare Appeals Council of the Departmental Appeals Board. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. The claimant also may seek judicial review, "as provided in 42 U.S.C. § 405(g)," of the final agency decision after a hearing of the administrative law judge or the Medicare Appeals Council, if those claims meet the statutory amount in controversy requirement.  42 U.S.C. § 1395ff(b)(1)(A), (E), 42 C.F.R. § 405.1136.

## II.        THE PUBLIC HEALTH SERVICE ACT

The Food and Drug Administration ("FDA") is responsible for protecting the public health by ensuring the safety, efficacy, and security of human and veterinary drugs, biological products, and medical devices; and by ensuring the safety of our nation's food supply, cosmetics, and products that emit radiation.  21 U.S.C. § 393(b).  Among other things, FDA is responsible for advancing the public health by helping to speed innovations that make medical products more effective, safer, and more affordable and by helping the public get the accurate, science-based information they need to use medical products and foods to maintain and improve their health.

FDA regulates biological products under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* and the Public Health Service Act, 42 U.S.C. § 262.  The Public Health Service Act's definition of a "biological product" includes any "virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, protein, or analogous

product . . . applicable to the prevention, treatment, or cure of a disease or condition of human beings."  42 U.S.C. § 262(i).

In a separate provision, the Public Health Service Act grants FDA broad authority to issue regulations to prevent the transmission of communicable diseases.  Section 361(a) of the Public Health Service Act, 42 U.S.C. § 264, provides:

> The Surgeon General, with the approval of the Secretary, is *authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases* from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a) (emphasis added).  This authority has been delegated to FDA.[4]

In 1997, FDA announced a new proposed tiered, risk-based approach for regulating a rapidly growing category of biological products—human cells, tissues, and cellular or tissue-based products ("HCT/Ps").  The tiered, risk-based approach was designed to provide only the degree of government oversight necessary to protect the public health and it largely relies on manufacturers to accurately self-designate their products.  *See* Proposed Approach to Regulation of Cellular and Tissue-Based Products, FDA Dkt. No. 97N-0068 (Feb. 28, 1997) (available at http://www.fda.gov/downloads/BiologicsBloodVaccines/GuidanceComplianceRegulatoryInformation/Guidances/Tissue/UCM062601.pdf); *see also* Proposed Registration Rule, 63 Fed. Reg. 26745, Proposed

---

[4]     The statute grants this authority to the Surgeon General, with the approval of the Secretary. The Office of Surgeon General was abolished by section 3 of 1966 Reorg. Plan No. 3, eff. June 25, 1966, 80 Stat. 1610, and all its functions were transferred to the Secretary of Health, Education, and Welfare (now the Department's Secretary) by section 1 of 1966 Reorg.  Plan No. 3, set out under 42 U.S.C. § 202.  The Secretary's authority has been delegated to FDA.  *See* FDA Staff Manual Guide 1410.10.1.A.3.

Approach to Regulation of Cellular and Tissue-Based Products; Availability and Public Meeting, 62 Fed. Reg. 9721 (Mar. 4, 1997).

To implement this tiered approach, FDA issued, through notice and comment rulemaking, several regulations invoking its communicable disease authority under section 361 of the Public Health Service Act, 42 U.S.C. § 264. *See* Human Cells, Tissues, and Cellular and Tissue-Based Products; Establishment Registration and Listing; Final Rule, 66 Fed. Reg. 5447 (Jan. 19, 2001) ("Final Registration Rule"); Eligibility Determination for Donors of Human Cells, Tissues, and Cellular and Tissue-Based Products; Final Rule, 69 Fed. Reg. 29786 (May 25, 2004); Current Good Tissue Practice for Human Cell, Tissue, and Cellular and Tissue-Based Product Establishments; Inspection and Enforcement; Final Rule, 69 Fed. Reg. 68612 (Nov. 24, 2004).

The regulations define HCT/Ps as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." 21 C.F.R. § 1271.3(d). FDA determined that, in limited circumstances, certain HCT/Ps can be effectively regulated solely by controlling the infectious disease risks that they present. Such products are regulated only under section 361 of the Public Health Service Act and the agency's HCT/P regulations (21 C.F.R. Part 1271), even if the HCT/Ps would otherwise meet the Public Health Service Act's definition of a "biological product." These products are sometimes referred to as "361 HCT/Ps," after the communicable disease provision in section 361 of the Public Health Service Act, 42 U.S.C. § 264. All other human and tissue-based products are regulated as drugs, devices, and/or biological drugs because they may present a greater degree of risk. 21 C.F.R. § 1271.20; Final Registration Rule, 66 Fed. Reg. at 5450.

FDA regulates an HCT/P, that does not otherwise meet any exception in 21 C.F.R. § 1271.15, solely under section 361 of the Public Health Service Act (42 U.S.C. § 264) and the

regulations in 21 C.F.R. Part 1271 if it meets the four criteria set forth in 21 C.F.R.§ 1271.10(a).[5]

Products that fail to meet any of the criteria in section 1271.10(a) remain subject to the provisions

of the Food, Drug, and Cosmetic Act and the Public Health Service Act, including the Food, Drug,

and Cosmetic Act's adulteration, misbranding, and premarket approval requirements.  *See* 21

U.S.C. §§ 321, 351, 352, 353; 21 C.F.R. § 1271.20; Final Registration Rule, 66 Fed. Reg. 5449,

5456.

---

[5]      21 C.F.R. § 1271.10(a) provides:

(a) An HCT/P is regulated solely under section 361 of the PHS Act and the regulations in this part if it meets all of the following criteria:

(1) The HCT/P is minimally manipulated;

(2) The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;

(3) The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing, preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and

(4) Either:

(i) The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or

(ii) The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and:

(*a*) Is for autologous use;

(*b*) Is for allogeneic use in a first-degree or second-degree blood relative; or

(*c*) Is for reproductive use.

From time to time, FDA issues guidance related to HCT/Ps.  *See, e.g.,* FDA Guidance, *Regulatory Considerations for Human Cells, Tissues, and Cellular and Tissue-Based Products: Minimal Manipulation and Homologous Use*, July 2020,  https://www.fda.gov/regulatory-information/search-fda-guidance-documents/regulatory-considerations-human-cells-tissues-and-cellular-and-tissue-based-products-minimal (providing current FDA thinking on the 21 C.F.R. § 1271.10(a) criterion of "minimal manipulation" and "homologous use").  FDA may also issue public statements such as public safety notifications, informing the public of serious adverse event reports, consumer alerts, and other patient and consumer resources.  On December 6, 2019, FDA issued a public safety notification in response to multiple reports of serious adverse events experienced by patients in Nebraska who were treated with unapproved products marketed as containing exosomes.   https://www.fda.gov/vaccines-blood-biologics/safety-availability-biologics/public-safety-notification-exosome-products.

On July 22, 2020, FDA issued a consumer alert regarding regenerative medicine products, including stem cell and exosome products, warning consumers about the lack of FDA approval for certain regenerative medicine therapies.   https://www.fda.gov/vaccines-blood-biologics/consumers-biologics/consumer-alert-regenerative-medicine-products-including-stem-cells-and-exosomes.  On June 3, 2021, FDA issued information for patients and consumers that discussed the potential risks and provided advice for people considering the use of regenerative medicine products.  https://www.fda.gov/vaccines-blood-biologics/consumers-biologics/important-patient-and-consumer-information-about-regenerative-medicine-therapies.  The 2020 consumer alert and 2021 posting notified the public that unapproved products include stem cells, stromal vascular

12

fraction (fat-derived cells), umbilical cord blood and/or cord blood stem cells,[6] amniotic fluid, Wharton's jelly, ortho-biologics, and exosomes. The 2021 posting also warned the public of numerous safety concerns raised by "any product that is illegally marketed as a regenerative medicine therapy" including blindness; tumor formation; neurological events; bacterial infections including life-threatening blood infections; reactions at the site of collection and administration; unwanted inflammatory or immune response to the cell or therapy; cells moving to another part of the body and turning into an unintended type of tissue or excessively growing in the body (i.e., forming a tumor); failure of the therapy to work as anticipated when approved treatments are available; and/or cross-contamination with bacteria, viruses or mold related to processing (preparation of the product) or the therapy not being tested for infectious diseases such as hepatitis and HIV.

## III.        THE TECHNICAL DIRECTION LETTERS

In part because of the dangers identified by FDA in the 2019 public safety notification, 2020 consumer alert, and 2021 posting, CMS became aware of issues with Medicare claims for HCT/Ps. It issued a Technical Direction Letter on February 2, 2022, to the MACs instructing them to deny claims for Medicare payment for manipulated amniotic and/or placental tissue biologics for injection. *See* Ex. A. The Letter stated that manipulated amniotic and/or placental tissue biologics for injection have not been proven to be safe and effective and referenced FDA's safety notices. The Letter applied to services rendered on or after December 6, 2019. *Id.* at 1. On

---

[6]      Currently, the only stem cell products that are FDA-approved for use in the United States consist of blood-forming stem cells (also known as hematopoietic progenitor cells) that are derived from umbilical cord blood. *See* https://www.fda.gov/vaccines-blood-biologics/cellular-gene-therapy-products/approved-cellular-and-gene-therapy-products. These products are approved for use in patients with disorders that affect the production of blood (i.e., the "hematopoietic" system) but they are not approved for other uses.

February 24, 2022, CMS issued a follow-up Technical Direction Letter providing step by step instructions to help the MACs operationally implement the February 2, 2022, Letter in a consistent manner. *See* Ex. B.

Plaintiff filed its Verified Complaint on March 15, 2022. ECF No. 1. Thereafter, on March 25, 2022, CMS issued a Technical Direction Letter rescinding the Letters issued on February 2, 2022, and February 24, 2022, and providing guidance on how MACs should handle claims that had already been processed under the two earlier Letters. *See* Ex. C. Specifically, the Technical Direction Letter instructed the MACs to remove system edits that automatically denied payment for amniotic and placental tissue product injections and to institute a manual claim-by-claim review by medically knowledgeable individuals (which requires requesting and then reviewing the beneficiary's medical records that are not submitted with the initial electronic claim) to determine whether a claim meets the reasonable and necessary criteria outlined under 42 U.S.C. § 1395y(a)(1)(A) of the Medicare statute, as well as any other applicable coverage and payment requirements. *Id.* The third Technical Direction Letter also directed the MACs to re-open any claims processed under the previous two Letters and evaluate them under that same manual claim-by-claim review process. *Id.* Finally, the Letter instructed the MACs to remove all coverage articles and educational materials that were issued in response to the two prior Letters. *Id.* The Letter required that MACs comply with the Letter's directions within 10 business days. *Id.*

## LEGAL STANDARD

Rule 12(b)(1) "requires courts to dismiss any case over which they lack subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and only have power that is expressly granted to them." *Joorabi v. Pompeo*, Civ. A. No. 20-0108 (RCL), 2020 WL 2527209, at *3 (D.D.C. May 17, 2020) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is the plaintiff's burden to establish that the Court has subject-matter jurisdiction."

*Joorabi*, 2020 WL 2527209, at *3 (citing *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). "A federal court presumptively lacks subject matter jurisdiction in a proceeding until a party demonstrates that jurisdiction exists. A party must therefore affirmatively allege in his pleadings the facts showing the existence of jurisdiction, and the court must scrupulously observe the precises jurisdictional limits prescribed by Congress." *Commodity Futures Trading Comm'n v. Nahas,* 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen*, 511 U.S. at 377 ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction. . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."). In deciding whether to grant a motion to dismiss for lack of jurisdiction, a district court may consider materials outside the pleadings. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992)).

## ARGUMENT

### I.     THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION

Plaintiff's Complaint alleges that the Court's jurisdiction is based on federal question jurisdiction, 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 702, the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, and the Mandamus Act, 28 U.S.C. § 1361. Am. Compl. ¶ 25. None of these serve as a basis for the Court's jurisdiction and, indeed, the Medicare Statute actually precludes it.

### A.     Regenative Has Not Obtained a Final Decision of the Secretary as Required for Judicial Review Under 42 C.F.R. § 405(g)

Congress has broadly divested courts of subject-matter jurisdiction "on any claim arising under" the Medicare Act except as provided for in 42 U.S.C. § 405(g). 42 U.S.C. § 405(h); *id.* § 1395ii (incorporating 42 U.S.C. § 405(h) into the Medicare statute); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (noting that section 405(g) is the "sole avenue for judicial review for all

'claim[s] arising under'" the Medicare Act) (alteration in original).  The authorization of judicial review under 42 U.S.C. § 405(g) "contains two separate elements: first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith v. Berryhill*, 139 S. Ct. 1765, 1773-74 (2019) (ellipses in original) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

As the Supreme Court and the D.C. Circuit have repeatedly recognized, a plaintiff does not satisfy the jurisdictional prerequisite of "presenting" a claim within the meaning of section 405(g) unless the plaintiff lodges the claim with the agency in the context of one of the established avenues for administrative review, such as by raising the challenge in the established administrative process that applies to requests for Medicare payment.  *See* 42 U.S.C. §§ 1395h(a), 1395u(a), 1395ff(b)(1). For example, in *Ringer*, the Supreme Court held that 42 U.S.C. §§ 405(g) and (h) barred a patient from seeking a prospective determination that a particular kind of surgery was "'reasonable and necessary' within the meaning of the Medicare Act." 466 U.S. at 620.  The Court reasoned that section 405(g) requires all claims "for future benefits" to be channeled through HHS by presenting a claim for payment and permitting the Secretary an "opportunity to rule on a concrete claim for reimbursement." *Id.* at 621-22; *see also American Hosp. Ass'n v. Azar*, 895 F.3d 822, 826 (D.C. Cir. 2018) (noting that "the requisite 'concrete claim for reimbursement'" in *Ringer* "must have meant a claim seeking specific payments through the reticulated Medicare scheme for administrative claims").

Likewise, in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), an association of nursing homes sought to challenge Medicare regulations that govern the sanctions or remedies imposed on nursing homes that provide care to Medicare beneficiaries and who do not

16

comply with Medicare's numerous statutory and regulatory requirements. *Id.* at 4-6. There, the Supreme Court explained that 42 U.S.C. §§ 405 (g) and (h) channel "most, if not all, Medicare claims through this special review system," including "virtually all legal attacks" on regulations. *Id.* at 8, 13. The Court thus held that these provisions require channeling regardless of the "'potential future' versus 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus the 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought," as well as "a distinction that limits the scope of § 405(h) to claims for monetary benefits." *Id.* at 13-14.

Applying *Ringer* and *Illinois Council*, the D.C. Circuit has likewise rejected a request for relief in advance of any request for Medicare payment and exhaustion of administrative remedies. In *American Hospital Association*, the court held that the district court lacked subject matter jurisdiction over an anticipatory legal challenge to a regulation which adjusted the payment Medicare would provide to hospitals for purchasing outpatient drugs. 895 F.3d at 824-25. In so holding, the court rejected the plaintiffs' arguments that "they satisfied the presentment requirement by filing comments opposing the regulation during the rulemaking." *Id.* at 826. As the court explained, this argument is "foreclosed by precedent," including *Ringer* and *Illinois Council*, which "makes clear that the presentment requirement generally prevents anticipatory legal challenges to Medicare rules and regulations," regardless of whether plaintiffs provided comments on the rulemaking. *Id.* at 826-27.

Instead, to properly present and channel a claim related to Medicare payments, a claimant must present that claim "in the context of a specific administrative claim for payment," and exhaust the prescribed administrative procedures. *American Hosp. Ass'n*, 895 F.3d at 826-27; *see also National Kidney Patients' Ass'n v. Sullivan*, 958 F.2d 1127, 1129-30, 1133 (D.C. Cir. 1992)

(holding that courts lacked jurisdiction over Medicare providers' challenge seeking injunctive relief against a "rate reduction" in a new regulation because plaintiffs' challenge sought to bypass an "administrative determination" in the "concrete setting" of a specific reimbursement decision); *Three Lower Ctys. Cmty. Health Servs., Inc. v. U.S. HHS*, 317 F. App'x 1, 3 (D.C. Cir. 2009) (per curiam) ("The Medicare Act . . . requires that parties present all such challenges to the agency in the context of a fiscal year reimbursement claim.").

As the Supreme Court has held repeatedly, a "claim 'arises under' the Medicare Act within the meaning of this provision . . . [if] 'both the standing and the substantive basis for the presentation' of the claim are the Medicare Act." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (quoting *Ringer*, 466 U.S. at 615). Regenative's primary objective in this case is to obtain declaratory and injunctive relief requiring Medicare to pay for its products Protext and Coretext. This claim therefore plainly "arises under" the Medicare Act because it is "inextricably intertwined with" a claim for prospective Medicare benefits. *Ringer*, 466 U.S. at 614-15 (quotation marks omitted); *see also Association of Am. Med. Colls. v. Califano*, 569 F.2d 101, 107 (D.C. Cir. 1977) (holding that 42 U.S.C. § 405(h) "precludes [28 U.S.C. §] 1331(a) jurisdiction of suits seeking eventual realization" of "reimbursement under the Medicare Act"). Plaintiff's "standing" is clearly predicated on the Medicare statute, because Regenative alleges that denial of Medicare payment for its products is harming it, and it seeks an order from this Court rescinding all payment denials.

Moreover, the Medicare statute plainly supplies "'the substantive basis for the presentation' of the claim[s]" at issue. *Your Home,* 525 U.S. at 456 (citation omitted). As explained above, Medicare Part B allows coverage of "medical and other health services." 42 U.S.C. §§ 1395k(a)(l), 1395m(j)(5), 5x(s)(1), (2)(A), (6), (8), & (9). Plaintiff argues that

Defendants' continuing application of the Technical Direction Letters limit its ability to receive Medicare reimbursement.  Am. Compl. ¶ 123.  Indeed, the two now rescinded Letters' *raison d'etre* was to instruct the MACs how to handle certain Medicare reimbursement claims.  Without a doubt this case arises under the Medicare statute and section 405(h) thus precludes subject-matter jurisdiction over Regenative's suit until it can satisfy the requirements of presentment and exhaustion under 42 U.S.C. § 405(g).

Plaintiff may argue that as a manufacturer (and not a supplier), it cannot appeal or administratively challenge a CMS policy, which will result in no review of actions involved in this lawsuit at all.  This is incorrect.  Although the Supreme Court has recognized one narrow exception to § 405(h)'s prohibition of federal question jurisdiction for disputes pertaining to the Medicare program, that limited exception does not apply here.  In *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 668 (1986), an association of physicians brought statutory and constitutional challenges to a Medicare regulation setting forth the "methods" for determining the amount of Part B payment for various physician services.  At that time, the Medicare statute provided for only limited "carrier" review of Part B benefit claims, and the Supreme Court had previously ruled that the statute precluded judicial review of the "amount of Part B awards." *United States v. Erika Inc.,* 456 U.S. 201, 208 (1982).  In *Michigan Academy*, 476 U.S. at 676, 681, the Supreme Court held that Congress did not preclude judicial "review of the method by which Part B awards are computed," so allowing federal question jurisdiction would ensure a judicial forum for colorable constitutional claims.

Then, in *Illinois Council*, the Supreme Court limited the *Michigan Academy* exception to § 405(h)'s bar of federal question jurisdiction.  The Court "read *Michigan Academy* as holding that § 1395ii does not apply § 405(h) [only] where application of § 405(h) would not simply channel

review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. The Court emphasized, however, that the scope of the exception to Section 405(h)'s jurisdictional preclusion is very limited:

> [W]e do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case. Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review.

*Id*. at 22-23 (emphasis in original) (citation omitted).

Plaintiff's claims do *not* fall within the limited exception to § 405(h)'s jurisdictional bar recognized in *Illinois Council* because there would not be *complete* preclusion of judicial review. Even if a particular plaintiff is unable to exhaust its claims, the channeling requirement "nonetheless applies" when an adequate proxy could raise the claims. *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 712 (D.C. Cir. 2011); *see also Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 817-18 (D.C. Cir. 2005); *Helomics, Inc. v. Novitas*, Civ. A. No. 15-1667, 2016 WL 374314, at *2 (W.D. Pa. Feb. 1, 2016) ("It matters not whether Plaintiff has an individual right to [administrative review of a Medicare claim]. So long as third parties have an aligned incentive, channeling is required.") (citing *Physicians Hosps. of Am. v. Sebelius,* 691 F.3d 649, 658-59 (5th Cir. 2012)); *Nat'l Athletic Trainers' Ass'n v. Dep't of Health & Human Servs.*, 455 F.3d 500, 507-08 (5th Cir. 2006); *Vertos Med., Inc. v. Novitas Sols., Inc.,* Civ. A. No. 12-3224, 2012 WL 5943542, at *6 (S.D. Tex. Nov. 27, 2012) ("the possibility of review is not completely precluded as long as third parties such as physicians or beneficiaries, have the ability and incentive to access . . . administrative review").

Here, the Medicare administrative review process is available to Medicare providers, suppliers, and beneficiaries. Since those parties' reimbursement claims were for Regenative's

products, their interests are consistent with, not contrary to, Regenative's.  Accordingly, there is "no complete preclusion of judicial review" under the Medicare statute—the channeling requirement addressed in *Illinois Council* applies and federal question jurisdiction is precluded. *Council for Urological Interests*, 668 F.3d at 712-13.  *See also RICU LLC v. HHS.*, 22 F.4th 1031, 1038 (D.C. Cir. 2022).

**B.      The APA, the Declaratory Judgement Act, the All Writs Act, and the Mandamus Act Fail to Provide a Basis for Jurisdiction**

Plaintiff also argues that its claims arise under the APA, the All Writs Act, the Declaratory Judgment Act, and the Mandamus Act.  Am. Compl. ¶ 25.  The Supreme Court has held, however, that § 405(h)'s bar of federal question jurisdiction is "sweeping and direct," *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975), and encompasses "all 'claims arising under the' Medicare Act." *Ringer*, 466 U.S. at 615 (citation omitted).  Thus, as this Circuit concluded, under the "*Salfi-Ringer* line" of precedent, § 405(h) requires that every aspect of any "claim arising under" the Medicare statute—whether constitutional, APA, substantive, or procedural—must be "fed through the administrative-judicial system as parts of disputes over actual amounts" of payment.  *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130, 1134 (D.C. Cir. 1992).

Moreover, even if the Medicare statute did not foreclose jurisdiction, it is well established that the APA, the All Writs Act, and the Declaratory Judgment Act do not provide an independent basis for jurisdiction.  *See Califano v. Sanders,* 430 U.S. 99, 107–07 (1977) (holding, in action brought under the Social Security Act, that "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions"); *Colorado Heart Inst., LLC v. Johnson*, 609 F. Supp. 2d 30, 34 (D.D.C. 2009) (holding, in action brought under Medicare statute, that "Section 702 of the APA does not provide an independent basis for jurisdiction"); *Lovitky v. Trump*, 918 F.3d 160, 161 (D.C. Cir. 2019) (holding that "§ 2201 (declaratory judgment) 'is not

an independent source of federal jurisdiction'"); *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999) ("the All Writs Act cannot enlarge a court's jurisdiction," quoting 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02 (3d ed. 1998)).

Mandamus jurisdiction is also not available here.  The remedy of mandamus is 'one of the most potent weapons in the judicial arsenal.'"  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).  Due to the potential conflict between the branches of government engendered by use of this remedy, courts have limited its application to "only . . . the clearest and most compelling cases."  *13th Reg'l Corp. v. Dep't of Interior,* 654 F.2d 758 (D.C. Cir. 1980).

For this Court to properly exercise its mandamus jurisdiction, Plaintiff must show that "(1) [it] has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).  The party seeking mandamus has the burden of establishing each element for relief. *Ringer*, 466 U.S. at 616; *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) ("those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief.") (*en banc*) (emphasis added).  "[M]andamus will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."  *13th Reg'l Corp.*, 654 F.2d at 760 (internal quotation marks omitted).  Significantly, even if a plaintiff could establish the three legal elements for mandamus relief, "a court may grant relief *only* when it finds '*compelling equitable grounds.*'"  *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.D.C. 2005) (internal quotation omitted) (emphasis added); *see also In re Cheney*, 406 F.3d at 729.

Plaintiff's claims fail to meet any of the prerequisites for mandamus relief, much less all of them.  Plaintiff does not, and cannot, point to specific statutes or other provisions that impose

on the Secretary clear, non-discretionary duties to provide payment for Regenative's products. In fact, Plaintiff's Amended Complaint is devoid of citation to any statutory and regulatory provisions contained in either the Medicare statute or its regulations that it alleges mandate Medicare Part B payment of its products. Plaintiff's request for mandamus relief also fails the third criterion, which requires there be no other adequate remedy available. Here, the Medicare statute and regulations provide Medicare beneficiaries, providers, and suppliers with ample means of pursuing relief. *See* 42 U.S.C. 405(g), 1395ff; 42 C.F.R. Part 405, Subpart I.

Finally, the D.C. Circuit has made clear that the "equitable" case for mandamus relief must be just as "clear and compelling" as the "legal" case. *13th Reg'l Corp.*, 654 F.2d at 760. But there is no equitable case for mandamus jurisdiction here, where Defendants have already provided Plaintiff with the relief it has requested.

## C.   <u>Plaintiff's Claims Are Not Ripe</u>

The ripeness doctrine's purpose is "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 37 (D.D.C. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Thus, "[b]ecause of the prudential considerations which innervate the ripeness doctrine," courts will dismiss claims "'even if there is not a constitutional bar to the exercise of [ ] jurisdiction.'" *Full Value Advisors, LLC v. SEC*, 633 F. 3d 1101, 1106 (D.C. Cir. 2011) (internal quotation marks and citation omitted); *see also Finca Santa Elena, Inc. v. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 370-71 (D.D.C. 2012) (granting motion to dismiss based on lack of prudential ripeness).

When deciding whether a challenge is ripe for review, courts consider three factors: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also, Food and Water Watch v. E.P.A.*, 5 F. Supp. 3d 62, 80 (D.D.C. 2013).

Despite the fact that Plaintiff's Amended Complaint centers on whether its products should be reimbursed by Medicare, the Amended Complaint does not challenge any final decisions by the Secretary on whether payment and coverage of its products satisfies the reasonable and necessary mandate in 42 U.S.C. § 1395y(a)(1)(A).  This is a fatal flaw in Plaintiff's case because, as demonstrated previously, a party's right to judicial review of coverage denials arises only after a party exhausts its administrative remedies and obtains the Secretary's final decision.  *See Ringer*, 466 U.S. at 606.

Additionally, the focus of any administrative review will not turn on the abstract question of whether Medicare should pay these claims because, as Plaintiff claims, they are "marketed, distributed, and regulated solely under Section 361" of the Public Health Service Act.  Am. Comp. ¶¶ 3, 9.  Instead, it turns on whether these particular products—regardless of their categorization— are reasonable and necessary to treat the conditions of individual Medicare beneficiaries.  42 U.S.C. § 1395y(a)(1)(A).

Before a Federal Court can decide that issue, the Medicare statute and more than 50 years of case law unequivocally preclude judicial intervention until the Secretary has made a record of the facts and rendered a final decision on whether the use of Plaintiff's products, in that specific factual situation, is reasonable and necessary.  Until then, Plaintiff's claims are not ripe.

Indeed, judicial review in the absence of a complete administrative record would not only saddle the Court with the unnecessary burden of overseeing the creation of a factual record, it would also preempt the Secretary's right to make a final decision once the facts have been established and the matter has been channeled through the various layers of administrative review. In short, until the Secretary makes a final decision on whether Plaintiff's products are reasonable and necessary for the treatment of each beneficiary's specific medical condition, any attempt at judicial review is unripe and must be dismissed. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotations omitted)); *Full Value Advisors, LLC*, 633 F. 3d at 1107 ("claim is not ripe where the 'possibility that further consideration will actually occur before implementation is not theoretical, but real.'") (quoting *Sierra Club*, 523 U.S. at 735 (1998)).

In addition to addressing the reasonable and necessary issue, the administrative process can also address Plaintiff's claim that the MACs are not handling claims in the manner instructed by the Secretary. Am. Compl. ¶ 109. Channeling this issue through the administrative process allows the Secretary to review that information, bring his expertise to these claims, and provide an explanation on whether the MACs have—or have not—followed Medicare's instructions on handling these claims. Indeed, if the agency does conclude that a MAC failed to follow proper procedures, allowing the administrative process to proceed permits the agency to correct such errors which, in turn, would almost certainly eliminate the need for judicial intervention.

It also bears mentioning that the Secretary has found no evidence that the MACs are automatically denying claims as claimed by Plaintiff, *see, e.g.,* Am. Compl. ¶¶ 107, 108, 109. But, if they disagree, claimants would be free to present such arguments in the administrative appeal

process.   Additionally, if the Secretary determines that some employees at the MACs were confused as to the Secretary's instruction then the Secretary can correct such mistakes at that time, alleviating Plaintiff's concerns while conserving judicial resources.   Additionally, if a claimant maintains after exhausting administrative appeal rights that judicial review is necessary, the Court can review the entire administrative record to determine whether it supports the Secretary's final decision on coverage and payment for Coretext and Protext.   That will be of enormous value to the Court, to the extent that any dispute remains between the Parties.

## II.   CMS RESCINDED THE MEDICARE PAYMENT INSTRUCTION THAT PLAINTIFF CHALLENGES IN THIS ACTION SO THOSE ALLEGATIONS ARE MOOT

### A.   Rescission of the Challenged Regulation Moots Plaintiff's Claims for Injunctive And Declaratory Relief

It is well settled law that a federal court may not "decide the merits of a legal question not posed in an Article III case or controversy."   *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994).   A federal court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."   *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).   There is "no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"   *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)) (in turn quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)); *see N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (*per curiam*) (claim for declaratory and injunctive relief against "old" municipal firearms transport rule "is . . . moot" where municipality amended rule and state amended underlying statute after Supreme Court granted review).   "To qualify as a case fit for federal-court

26

adjudication, an actual controversy must be extant *at all stages* of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted; emphasis added).

Under the mootness doctrine, the D.C. Circuit concluded over a decade ago that prospective relief such as "declaratory and injunctive relief would no longer be appropriate if intervening events have provided the relief sought by the plaintiff against the defendant." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997). More recently, in *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020), the D.C. Circuit reaffirmed the mootness doctrine, holding that "the government's abandonment of a challenged regulation is just the sort of development that can moot an issue." *Id.*

Plaintiffs in *Friends of Animals* challenged certain "findings" of the U.S. Fish and Wildlife Service that would allow sport-hunted animal "trophies" to be imported into the United States. 961 F.3d at 1200. At issue in the case was the U.S. Fish and Wildlife Service's regulation of the importation of the dead bodies (or parts of dead bodies) ("trophies") of sport-hunted animals whose species are endangered or threatened with extinction. *Id.* at 1201. Importation of sport-hunted trophies of threatened species is banned subject to species-specific exceptions. *Id.* The species-specific exceptions, in turn, hinge on the Fish and Wildlife Service making certain "findings" regarding the impact the killing of an animal will have on the species' survival. *Id.* In *Friends of Animals,* plaintiffs' challenged Fish and Wildlife Service's finding, made in 2017, that killing lions and elephants in Zimbabwe during the years 2016-18 would enhance the species' survival ("2017 findings"). *Id.* After similar "findings" for different years were struck down by the D.C. Circuit because they were legislative rules issued without notice and comment, the Department of Interior

withdrew the 2017 findings that were challenged in *Friends of Animals* and announced that it would proceed by informal adjudication. *Id.*

The D.C. Circuit held that the case was moot. *Id.* at 1203. The court noted that the government had withdrawn the challenged findings, eliminating their legal effect and therefore leaving nothing for the court to adjudicate. *Id.* Even though the Fish and Wildlife Service stated that it would use the findings in its informal adjudications, the D.C. Circuit still held that the findings themselves no longer had legal effect and are "classically moot." *Id.* (quoting *Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 105-06 (D.C. Cir. 2016) (where "[e]ach cause of action challenged the validity of" regulatory exception and "that regulation no longer exists, we can do nothing to affect [challenger's] rights relative to it, thus making this case classically moot for lack of a live controversy")).

As another example, the D.C. Circuit held in *Center for Science in the Public Interest ("CSPI") v. Regan*, 727 F.2d 1161, 1167 (D.C. Cir. 1984), that an intervening change moots a challenge to a prior rule. The agency in that case "was legitimately empowered to initiate further rulemaking to correct the deficiencies that the district court found in [the prior rule]." *Id.* at 1164-65. Because the prior rule that was allegedly the source of the harm had been superseded, the D.C. Circuit concluded that "[a]ny appellate pronouncement on the validity of that rule would be meaningless," and dismissed the appeal. *Id.* at 1165.

Plaintiff's Amended Complaint seeks declaratory and injunctive relief against the MACs' application of CMS's Technical Direction Letters dated February 2, 2022, and February 16, 2022. *See, e.g.,* Am. Compl. ¶¶ 136, 143, Prayer for Relief seeking injunctive relief and a declaratory judgment (¶¶ 1.a.-c.). There is no dispute that the March 25, 2022, Technical Direction Letter rescinded the February 2, 2022, and February 16, 2022, Letters. And, like the disputed findings

in *Friends of Animals*, or the disputed regulation in *CSPI*, a decision on the merits of the allegations in the Complaint regarding those earlier and now rescinded Letters would be an impermissible advisory opinion. *See*, *e.g.*, *Nat'l Black Police Ass'n*, 108 F.3d at 351, 354; *Akiachak Native Cmty.*, 827 F.3d at 106; *Phillips v. McLaughlin*, 854 F.2d 673, 674-75 (4th Cir. 1988) ("A request for prospective relief alone, founded on a challenge to a regulation which no longer applies to plaintiffs, does not present an actual case or controversy."). The case alleged in the Complaint is moot and should be dismissed.

### B. There is No Reasonable Expectation that the Alleged Violation Will Recur and Interim Relief Has Completely Eradicated the Effects of the Alleged Violation

As the D.C. Circuit explained in both *National Black Police Association* and *American Freedom Defense Initiative v. Washington Metropolitan Area Transit Authority*, 901 F.3d 356, (D.C. Cir. 2018), where "'[t]he intervening event . . . is of the [defendant]'s own doing' [the D.C. Circuit] will examine whether the defendant's voluntary cessation of the challenged action truly renders the case moot." *Am. Freedom*, 901 F.3d at 362 (quoting *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012)). Generally, a court will conclude that the subsequent action has rendered the case moot when: "'(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'" *Am. Freedom*, 901 F.3d at 362 (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 349).

Here, there is no reasonable expectation that the alleged violation will recur. CMS has not announced any intention to reenact the previous Technical Direction Letters and has replaced the policy articulated therein with an instruction to the MACs to institute a manual claim-by-claim review process.

Plaintiff's allegation that the Defendants are lying about the recission is also unfounded—the MACs have discontinued automatic claim denials and are applying the statutorily-mandated reasonable and necessary standard after review of individual beneficiary medical records.  Any conjecture that CMS has or would revive its previous Letters is entirely false and is insufficient to forestall dismissal because of mootness.  *See Akiachak Native Cmty.*, 827 F.3d at 106.  As the *Akiachak Native Cmty.* court found:

> "Although the voluntary repeal of a regulation does not moot a case if there is reason to believe the agency will reinstitute it, 'the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists' absent 'evidence indicating that the challenged [rule] likely will be reenacted.'  No such evidence exists here.").

*Id*. (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 349).

Likewise, interim events have eradicated the effects of the alleged violation.  The MACs have removed the claims processing system edits that automatically rejected claims for Plaintiff's products and are now following the March 25, 2022, Technical Direction Letter's instruction to process claims pursuant to their usual procedures for claim-by-claim reviews.  There is, therefore, no additional practical relief this Court could afford Plaintiff.  Even if Plaintiff's lawsuit requested that this Court order CMS or the MACs to make payment for its products (and it does not), this Court lacks jurisdiction to make such an order and such an order would be unlawful.  As a matter of law, claims under the Medicare program may only be paid if they meet certain statutory requirements that are not at issue in this litigation and cannot be resolved in this litigation.

Federal courts may only decide "'actual, ongoing controversies' and a federal court has no 'power to render advisory opinions [or] . . . 'decide questions that cannot affect the rights of litigants in the case before them.'"  *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Honig v. Doe,* 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (in turn quoting

*North Carolina v. Rice,* 404 U.S. 244, 246 (1971))).  A court must "refrain from deciding" cases where "'events have so transpired that the decision will neither presently affect the parties' rights nor have a *more-than-speculative* chance of affecting them in the future.'"  *Nat'l Black Police Ass'n,* 108 F.3d at 349 (quoting *Clarke v. United States,* 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (in turn quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 575 (D.C. Cir. 1990))).  Here, any chance that the allegedly wrongful behavior could be expected to recur is nothing more-than-speculative.  The voluntary cessation doctrine therefore supports dismissal on mootness grounds.

Plaintiff also spills much ink arguing that CMS has usurped the regulatory authority of FDA, s*ee, e.g.,* Am. Compl. ¶¶ 86-88, 92-93, but that issue is a red herring and not relevant to the disposition of this lawsuit.  According to Plaintiff, CMS has impermissibly determined that Plaintiff's products are not appropriately regulated under Public Health Service Act section 361 and its regulation at 21 C.F.R. § 1271.  Am. Compl. ¶ 92.  The Technical Direction Letters, however, state that the basis for denying claims for amniotic and placental tissue injections is because "in some cases" they "have not been proven safe or effective" not because there is a question about the whether the products have been appropriately categorized under Section 361 of the Public Health Safety Act.

As Plaintiff acknowledges, CMS and FDA are responsible for executing different statutory schemes.  *See supra* at 4-8 (description of the Medicare program) and 8-12 (description of FDA's relevant regulatory authority).  CMS's determination of whether a product billed to Medicare is safe and effective and, therefore, "reasonable and necessary" under the Medicare statute, 42 U.S.C. §§ 1395ff(a)(1), 1395hh, 1395y(a)(1)(A), stands separate and apart from FDA's authority under the Public Health Safety Act (42 U.S.C. § 264) to regulate Regenative's products.  Clearly and

obviously in some instances one agency's actions may have an impact on the activities of the other. But the mere fact that both CMS and FDA have authority to regulate a common classification of products or the activities of a common manufacturer does not inherently mean that either agency is acting unlawfully. Moreover, even if one were to accept for the sake of argument that the FDA has issued a blanket approval of Plaintiff's products, it does not follow that their use is reasonable and necessary for treating the medical condition of a specific beneficiary.

Plaintiff's allegation that CMS's Technical Direction Letters and FDA's safety notices use similar language does not change the basis for action stated in the Technical Direction Letters. Further, no legal authority prevents CMS from using FDA's safety notices as part of the grounds for it taking action with regards to its own regulatory authority. CMS's consideration of, and citation to, FDA's safety notices was by no means inappropriate or unlawful.

A declaratory judgement from this Court that Plaintiff's product is a 361 product would not address CMS's stated reason for issuing the Technical Direction Letters and therefore could not lead to the relief that Plaintiff seeks. This would be true even if the Letters had not been rescinded and the case rendered moot on that ground.

## III.    THE MACS SHOULD BE DISMISSED FROM THIS CASE

The Secretary is the real party in interest in this litigation and the MACs should therefore be dismissed from the case. While Congress intended for MACs to play a "considerable role" in the Medicare reimbursement program by "carrying on for [the Secretary] the governmental administrative responsibilities imposed by the bill," the "Secretary . . . [is] the real party in interest in the administration of the program." S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S. Code Cong. & Admin. News 1943, 1992-95. As the U.S. Supreme Court has acknowledged, the Secretary's regulations expressly state that the Secretary, not the MACs, is the real party in interest in any litigation involving the Medicare program:

> *Indemnification of intermediaries and carriers*. Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of CMS and *CMS is the real party of interest in any litigation involving the administration of the program.*

42 C.F.R. § 421.5 (emphasis added); *United States v. Erika, Inc.*, 456 U.S. 201, 206 n.4 (1982).

Most courts that have considered the issue have found that the Secretary is the real party in interest and dismissed contractors from actions that name as defendants both the Secretary and the contractors. *See, e.g., Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*, 485 F.2d 1073, 1074-75 (D.C. Cir. 1973) (finding diversity jurisdiction unavailable in suit against Medicare contractor for unpaid benefits because "[t]he [Medicare Act] and regulations . . . make it clear that [the contractor] is an agent for the Government."); *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 86 (D.D.C. 2010) (citing *Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*, 485 F.2d 1073, 1074-75 (D.C. Cir. 1973)).   *See also Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856-57 (9th Cir. 1984) ("[t]he United States is the real party in interest in actions against Medicare carriers [MAC predecessors] because recovery would come from the federal treasury"); *Mitchell v. Occidental Life Ins., Medicare*, 619 F.2d 28, 30 (9th Cir. 1980); *Peterson v. Weinberger*, 508 F.2d 45, 51-52, n.7 (5th Cir. 1975) (United States is the real party in interest in physician's suit against intermediary [MAC predecessor]); *Pavano v. Shalala*, 95 F.3d 147,148 (2d Cir. 1996) ("[b]ecause the carriers are authorized agents of . . . the Department of Health and Human Services, *see* 42 U.S.C. § 1395u(a), the Secretary is the real party in interest here, *see* 42 C.F.R. § 421.5(b).").

In this case it was CMS, acting on behalf of the Secretary, that issued the Technical Direction Letters that Plaintiff here challenges.  CMS also determines what, if any, amount shall be paid to each health care entity and when Medicare payments are made.  *See*, *e.g*., 42 U.S.C. § 1395g(a) ("The Secretary shall periodically determine the amount which should be paid under

this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time as the Secretary believes appropriate.").  All of Plaintiff's allegations against the MACs involve actions that the MACs took pursuant to their contracts with the Secretary and at the direction of CMS.  The MACs have no vested interest in Medicare funds or whether Plaintiff's products are eligible for Medicare payment; the MACs make Medicare claim payments with Medicare Trust Fund dollars.

Moreover, the Medicare statute also provides immunity to the MACs against claims alleging mis-payment of Medicare services, except in the case of "reckless disregard" or "intent to defraud," and offers indemnification of the MACs sued for any matter "arising from or relating directly to the claims administration process."  42 U.S.C. § 1395kk-1(d)(3) and (4); *see also Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) ("Fiscal intermediaries, when acting as agents for [CMS], are also protected by sovereign immunity."); *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir. 1977) (same); *Grp. Health, Inc. v. Blue Cross Ass'n*, 739 F. Supp. 921, 932-33 (S.D.N.Y. 1990) (Secretary is the real party in interest and, as such, fiscal intermediary is entitled to sovereign immunity with respect to claims based on negligent misrepresentations), *cited with approval in Pani v. Empire Blue Cross/Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998).  Limited liability and indemnification for the MACs exists because they carry out governmental functions and because the Secretary is the real party in interest in litigation involving the administration of Medicare. 42 C.F.R. § 421.5(b). Therefore, the MACs enjoy immunity from liability, except when their actions are made with reckless disregard or an intent to defraud, claims not alleged in the Plaintiff's complaint.  The MACs' immunity from suit means that Plaintiff has not alleged a claim for which relief can be granted against them, and Plaintiff's suit against them must be dismissed. *Cf. Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 351 (3d Cir. 2012)

(upholding dismissal of state tort claims for failing to state a claim because "[defendants], as Medicare contractors, are entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties."); *Midland Psychiatric Assoc., Inc. v. United States*, 145 F.3d 1000, 1005 (8th Cir. 1998); *Marsaw v. Thompson*, 133 Fed. App'x. 946, 948 (5th Cir. 2005) (no private right of action against private entities, such as Medicare contractors, "that engage in alleged constitutional deprivations while acting under color of federal law.").

Given the undisputed legal status of the Secretary as the real party in interest in this matter, and the fact that the MACs have immunity from suit, there is no practical reason or legal basis to maintain the MACs as parties in this litigation and they should be dismissed.

*      *      *

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the Amended Verified Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).

Dated: August 25, 2022

       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN J. HUDAK
Chief, Civil Division

By: */s/ Diana V. Valdivia*
    DIANA V. VALDIVIA, D.C. Bar #1006628
    Assistant United States Attorney
    601 D Street, N.W.
    Washington, D.C. 20530
    T: (202) 252-2545
    diana.valdivia@usdoj.gov

*Counsel for Defendants*


*Of Counsel*:

    SAMUEL R. BAGENSTOS
    *General Counsel*

    JANICE L. HOFFMAN
    *Associate General Counsel*

    SUSAN MAXSON LYONS
    *Deputy Associate General Counsel for Litigation*

    JULLIA CALLAHAN BRADLEY
    *Attorney*

    *U.S. Department of Health and Human Services*