UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROW 1 INC. (d/b/a REGENATIVE LABS),

        Plaintiff,

    v.

XAVIER BECERRA,
Secretary of Health and Human Services, et al.,

        Defendants.

Civil Action No. 22-0718 (APM)

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED VERIFIED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.  THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION............4

    A.  The Medicare Statute, 42 U.S.C. §§ 405(h) and 1395ii, Precludes Federal
        Question Jurisdiction over any Claim That Arises Under the
        Medicare Statute…………………………………………………………………....4

    B.  The Exception to Section 405(h)'s Jurisdictional Bar Is Not Applicable Here……....9

    C.  There Is No Final Determination……………………………………….……………15

    D.  Mandamus is Inapplicable in this Case……………………………………….......15

II.  PLAINTIFF'S ALLEGATION THAT THE SECRETARY HAS CONTINUED TO
    FOLLOW THE FIRST TWO TECHNICAL DIRECTION LETTERS FAILS THE
    STANDARDS OF *IQBAL* AND *TWOMBLY*…………...……………………………17

CONCLUSION………………………………………………………………………..20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Alliance of Senior Citizens v. Leavitt*,
   483 F.3d 852 (D.C. Cir. 2007) ............................................................................ 12

*Akebia Therapeutics, Inc. v. Azar*,
   976 F.3d 86 (1st Cir. 2020) ................................................................................ 11

*Akebia Therapeutics, Inc. v. Becerra*,
   548 F. Supp. 3d 274 (D. Mass. 2021) ................................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 17

*Azar v. Allina Health Services*,
   139 S. Ct. 1804 (2019) ......................................................................................... 6

*Baxter Healthcare Corp. v. Weeks*,
   643 F. Supp. 2d 111 (D.D.C. 2009) .................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 17, 18

*California Clinical Lab. Ass'n v. Sec'y of Health & Human Servs.*,
   104 F. Supp. 3d 66 (D.D.C. 2015) ...................................................................... 10

*Council for Urological Interests v. Sebelius*,
   668 F.3d 704 (D.C. Cir. 2011) ................................................................... 9, 10, 15

*Full Value Advisors, LLC v. SEC*,
   633 F. 3d 1101 (D.C. Cir. 2011) ......................................................................... 15

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ................................................................................ 4, 7, 8, 9

*Helomics, Inc. v. Novitas*,
   Civ. A. No. 15-1667, 2016 WL 374314 (W.D. Pa. Feb. 1, 2016) .......................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 5

*Nat'l Ass'n of Rehab. Facilities, Inc. v. Bowen*,
   840 F.2d 931 (D.C. Cir. 1988) ........................................................................... 8, 9

*Nat'l Assoc. of Home Health Agencies v. Schweiker*,
   690 F.2d 932 (D.C. Cir. 1982) ........................................................................ 7, 8, 9

*Nat'l Kidney Patients Ass'n v. Sullivan*,
   958 F.2d 1127 (D.C. Cir. 1992) ............................................................................ 4

*Physicians Hosps. of Am. v. Sebelius*,
   691 F.3d 649 (5th Cir. 2012) .............................................................................. 10

*Porzecanski v. Azar*,
   943 F.3d 472 (D.C. Cir. 2019) .............................................................................. 8

*Power v. Barnhart*,
   292 F.3d 781 (D.C. Cir. 2002) ............................................................................ 16

*RICU LLC v. HHS*,
   22 F.4th 1031 (D.C. Cir. 2022) ....................................................................... 9, 10

*Sensory Neurostimulation, Inc. v. Azar*,
   977 F.3d 969 (9th Cir. 2020) .............................................................................. 10

*Shalala v. Illinois Council on Long Term Care. Inc.*,
    529 U.S. 1 (2000)............................................................................................... passim
*Southwest Pharmacy Solutions v. CMS*,
    718 F.3d 436 (5th Cir. 2013) ..................................................................... 13, 14
*Texas v. United States*,
    523 U.S. 296 (1998)........................................................................................... 15
*Three Lower Cntys. Cmty. Health Servs., Inc. v.* U.S. Dep't of Health & Human Servs.,
    517 F. Supp. 2d 431 (D.D.C. 2007)................................................................ 10
*Weinberger v. Salfi*,
    422 U.S. 749 (1975).......................................................................................... 4, 9
*Your Home Visiting Nurse Servs., Inc. v. Shalala*,
    525 U.S. 449 (1999).......................................................................................... 4, 5

**Statutes**

5 U.S.C. § 704...................................................................................................... 15
28 U.S.C. § 1331.................................................................................................... 8
28 U.S.C. § 2201.................................................................................................... 8
42 U.S.C. § 405(h)........................................................................................ 2, 4, 8, 11
42 U.S.C. § 1395hh(a)(2)..................................................................................... 6
42 U.S.C. § 1395ii................................................................................................ 2
42 U.S.C. § 1395y(a)(1)(A)............................................................................ 1, 13, 16
42 U.S.C. § 405...................................................................................................... i
42 U.S.C. §§ 1395j-1395w-6............................................................................. 12

**Rules**

Federal Rule of Civil Procedure 8 ...................................................................... 17
Federal Rule of Civil Procedure 12(b)(1) .......................................................... 19
Federal Rule of Civil Procedure 12(b)(6) .......................................................... 19

**Regulations**

42 C.F.R. Part 414................................................................................................ 12
42 C.F.R. Part 423................................................................................................ 12
42 C.F.R. § 405.910............................................................................................. 13, 14

By and through undersigned counsel, Defendants: Xavier Becerra, in his official capacity as the Secretary of the United States Department of Health and Human Services (the "Department"); the Department itself; Chiquita Brooks LaSure, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services ("CMS"); CMS; and Noridian Healthcare Solutions, LLC; Wisconsin Physicians Service Insurance Corporation; Novitas Solutions, Inc.; National Government Services Inc.; CGS Administrators, LLC; Palmetto GBA, LLC; and First Coast Service Options, Inc., (collectively "Defendants"), respectfully submit this Reply In Further Support of Defendants' Motion to Dismiss Plaintiff Row 1, Inc., d/b/a Regenative Labs' ("Regenative") Amended Verified Complaint (ECF No. 19).

## **INTRODUCTION**

This Court has no jurisdiction over this case, and it should be dismissed.  Plaintiff alleges that it is making a procedural challenge to three CMS contractor instructions (Technical Direction Letters) addressing how contractors should handle certain claims seeking Medicare reimbursement for injections of amniotic and placental tissue products.  The agency rescinded two of those instructions, however, and replaced them with the third instruction.  The operative instruction states that Medicare contractors should "institute claim-by-claim review to determine whether a claim for reimbursement of amniotic and placental tissue product injections meets the reasonable and necessary criteria outlined under section 1862(a)(1)(A) [42 U.S.C. § 1395y(a)(1)(A)] of the Social Security Act."

Plaintiff manufactures two products, Protext and Coretex, that fall under the third contractor instruction.  Apparently anticipating that claims for reimbursement of its products will be denied, Plaintiff seeks judicial review.  Plaintiff argues that its "type" of judicial challenge is

somehow exempt from the longstanding jurisdictional bar on federal question jurisdiction over Medicare disputes that have not been channeled through the administrative appeals process.

It is not.  Rather than countenancing attempts such as this one to drag courts into vague, shifting, and poorly defined complaints about interim agency action, Congress mandated that all claims arising under the Medicare statute first be channeled through an administrative appeals process.  Federal jurisdiction over the claim only arises after the administrative process is concluded and the agency issues a final decision.  Moreover, any attempt to avoid the administrative process by alleging federal question jurisdiction is expressly barred by 42 U.S.C. § 1395ii's incorporation of the jurisdictional bar at 42 U.S.C. § 405(h).

In a misguided attempt to avoid the statute's administrative channeling mandate, Plaintiff cites caselaw stating that a federal court can exercise federal question jurisdiction in cases where judicial review would be entirely unavailable through the established administrative appeals process.  But this exception is extremely narrow, and it only applies when the Medicare administrative appeals process poses a genuine roadblock to judicial review.  That is not the case here.

There are at least two ways for Plaintiff's claims to be heard in the administrative appeals process, either through a proxy or through a proxy with Plaintiff acting as an appointed representative.  As such, the exception to section 405(h)'s ban on jurisdiction does not apply in this case.

Moreover, even if this Court did apply the exception to Congress's bar on subject matter jurisdiction and decided to analyze the merits of this case, that exercise of jurisdiction would be a waste of judicial resources since there is no final agency action to review.  Indeed, the third contractor instruction does not cover new ground.  It merely instructs Medicare contractors to

determine whether a claim related to amniotic and placental tissue product injections meets the statutorily required reasonable and necessary standard—a standard that Medicare has been applying for decades.  Moreover, Plaintiff's baseless argument that the agency has lied to this Court and that the first two Technical Direction Letters are still in force is void of any reliable factual support and is belied by Plaintiff's own statements.

Given the lack of a final decision to review, coupled with the fact that the Secretary has rescinded the first two Technical Direction Letters and instructed Medicare contractors to determine if reimbursement claims for Plaintiff's products meet the statute's reasonable and necessary mandate, there is no relief that this Court could grant at this juncture that would remedy Plaintiff's only legally cognizable harm—i.e., the lack of Medicare reimbursement.  Indeed, even if this Court granted the extraordinary remedy of vacating all the Technical Direction Letters (and there are no grounds to do so), nothing would change: the Secretary would still be statutorily obligated to apply the reasonable and necessary standard as he is currently doing and as is articulated in the third Technical Direction Letter.

None of this means that Plaintiff is simply out of luck.  Rather, if Plaintiff is dissatisfied with the results of the Secretary's claims review, then it may work with its customers through the legally available channels for administrative review.  Plaintiff and its customers will have a full opportunity to present the argument that the claims for payment are reasonable and necessary for the treatment of the individual beneficiary.  The Secretary will develop a full record addressing that question which, in turn, will greatly streamline any subsequent judicial review.  And, as an appointed representative, Plaintiff itself can fully participate in the administrative appeals.

In short, there are no legal grounds to hear Plaintiff's case at this point: it is incomplete and premature and should be dismissed.

## ARGUMENT

**I.   THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION**

**A.   The Medicare Statute, 42 U.S.C. §§ 405(h) and 1395ii, Precludes Federal Question Jurisdiction over any Claim That Arises Under the Medicare Statute**

The Medicare statute, 42 U.S.C. §§ 405(h) and 1395ii, expressly bars federal question jurisdiction in cases that arise under the Medicare statute.[1]  As the Supreme Court repeatedly has held, a "claim 'arises under' the Medicare Act within the meaning of this provision . . . [if] 'both the standing and the substantive basis for the presentation' of the claim are the Medicare Act." *Id.* at 456 (*quoting Heckler v. Ringer*, 466 U.S. 602, 615 (1984)).

The Supreme Court emphasized that Section 405(h)'s bar of federal question jurisdiction is "sweeping and direct," *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975), and encompasses "all 'claims arising under the' Medicare Act." *Ringer*, 466 U.S. at 615 (citation omitted).  Thus, as the D.C. Circuit concluded, Section 405(h) requires that every aspect of any "claim arising under" the Medicare statute—whether constitutional, brought pursuant to the Administrative Procedure Act ("APA"), substantive, or procedural—must be "fed through the administrative-judicial system as parts of disputes over actual amounts" of payment.  *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130, 1134 (D.C. Cir. 1992).  The Supreme Court has explained:

> Those cases themselves foreclose distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought.

*Shalala v. Ill. Council on Long Term Care. Inc.*, 529 U.S. 1, 14 (2000).

---

[1]   Indeed, in *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999), the Supreme Court held that section 405(h) precludes federal question jurisdiction over a contractor's denial of hospital's request to reopen its Medicare cost report despite the fact that the Medicare statute does not provide an avenue for judicial review of those decisions.

*Illinois Council* also rejected any "distinction that limits the scope of § 405(h) to claims for monetary benefits" as distinct from claims that "dispute agency policy determinations, or . . . involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions." *Id.* Rather, the Medicare statute's comprehensive remedial administrative review scheme "demands the 'channeling' of virtually all legal attacks" on Medicare matters "through the agency" before they can be heard in federal court. *Id.* at 13.

This entire case turns on Plaintiff's claim that its products should be reimbursed by Medicare. The Medicare statute, therefore, plainly supplies "'the substantive basis for the presentation' of the claim[s]" at issue. *Your Home Visiting Nurse Servs.,* 525 U.S. at 456 (citation omitted). And, as such, there can be no federal question jurisdiction over this dispute. Here, the only reason for Plaintiff to seek a reversal or vacatur of the challenged payment policies is because it wants to ensure a stream of Medicare funding so that it can sell its products. *See* Am. Verified Compl. ¶¶ 12, 123-25, ECF No. 19 ("Am. Compl."). Plaintiff's very claims of harm are dependent on its allegation that Medicare was not paying for its product. *Id.* Plaintiff's "standing" is clearly predicated on the Medicare statute, for it seeks an order from this Court rescinding a Medicare payment instruction. Am. Compl. Prayer for Relief, ¶ 1. Plaintiff's argument that this suit does not seek to recover on specific claims but rather is directed at correcting the Secretary's alleged procedural missteps is unavailing. Plaintiff does not have standing to challenge a procedural violation that causes it no concrete harm. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiff itself defines the "Nature of the Action" in its Amended Verified Complaint, and eight of the 12 paragraphs in that section extensively discuss Medicare claims processing issues. Am. Compl. ¶¶ 8-12. The only harm to which Plaintiff points to justify its standing is that it may

have to close its doors because providers will not purchase its product if Medicare does not pay for it.  Am. Compl. ¶ 12.  Plaintiff cannot point to any other concrete, legally cognizable harm that confers Article III standing except, perhaps, lost sales allegedly caused by Medicare's denial of payment for its products.  But even that issue turns on the question of whether or not reimbursement for Plaintiff's products is, in fact, reasonable and necessary for treating individual Medicare beneficiaries and therefore is eligible for coverage and payment.  In short, despite Plaintiff's artful attempts to plead around that inevitable conclusion, there simply is no possible way to read Plaintiff's suit without Medicare issues being at the forefront.

Moreover, even if one accepted for argument's sake that Plaintiff's case is, in fact, merely a challenge to a procedural action by the Secretary and not an attempt to receive payment for individual claims, Plaintiff's jurisdictional arguments still would fail.  The two now-rescinded Technical Direction Letters' entire *raison d'etre* was to instruct the Medicare Administrative Contractors ("MACs") on how to process certain Medicare reimbursement claims.  And the question of whether the Secretary complied with any applicable notice and comment requirements in issuing the Technical Direction Letters arises under the Medicare statute.  42 U.S.C. § 1395hh(a)(2)).  *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).

Plaintiff's own characterization of this lawsuit makes this abundantly clear.  For example, in Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff included an extensive discussion of the Secretary's obligations for notice and comment rule making under the Medicare statute and related case law.[2]  Plaintiff's Opposition to Defendants' Motion to Dismiss at 2-11, ECF No. 25, ("Pl. Opp.") ("The Medicare statute expressly requires CMS to comply with specific

---

[2]     Given that the issue presently before the Court is whether this suit should be dismissed for want of jurisdiction, Defendants do not reply in depth to Plaintiff's arguments regarding the merits of its case except to the extent that they are relevant to the jurisdictional disposition of the case.

notice-and-comment requirements when implementing requirements, rules, or policies that substantively change a legal standard governing the provision of benefits under the Medicare statute[.]").

Regardless of whether Plaintiff's challenge to the Technical Direction Letters is deemed "procedural," constitutional, or assigned some other label, Plaintiff's allegations are "inextricably intertwined" with its desire for Medicare reimbursement for its products, and thus Section 405(h) bars federal question jurisdiction and requires that a final decision first be channeled through administrative appeals on all aspects of its "claims arising under" the Medicare statute. *Ringer*, 466 U.S. at 614.

Even though Plaintiff's lawsuit is, in actuality, a claim for Medicare reimbursement that can be channeled through the administrative process, Plaintiff claims that it has the right to jump directly into district court. Am. Compl. ¶ 25. The fundamental problem with this argument, however, is that it relies on a forty-year-old D.C. Circuit case that has been superseded by subsequent decisions of both the Supreme Court and the D.C. Circuit.

In the case on which Plaintiff's argument hinges, *Nat'l Assoc. of Home Health Agencies v. Schweiker*, 690 F.2d 932 (D.C. Cir. 1982), a trade association representing Medicare-participating home health agencies challenged a regulation that ended Medicare's practice of allowing some freestanding home health agencies to file their reimbursement claims directly with the Secretary. The new policy was implemented without notice-and-comment rulemaking, and it mandated that home health agencies file claims with one of forty-nine designated Medicare contractors. *Id.* at 935.

In upholding the home health agencies' regulatory challenge, the D.C. Circuit found that Section 405(h)'s administrative channeling mandate only applies to "substantive" challenges

"brought to recover on any claim arising under the Medicare Act." *Id.* at 937 (internal citation omitted). Since the home health agencies' lawsuit "was brought to challenge secretarial action unrelated to reimbursement disputes[,]" the Court found that the case turned on "procedural" issues and, as such, the administrative channeling rules of 42 U.S.C. § 405(h) did not apply.

But *Schweiker* is no longer good law on this point. In *Heckler v. Ringer*, 466 U.S. 602 (1984), the Supreme Court unequivocally rejected the D.C. Circuit's distinction between procedural and substantive challenges to Medicare policies. It held:

> We conclude that all aspects of respondents' claims for benefits should be channeled first into the administrative process which Congress has provided for the determination of claims for benefits. We, therefore, disagree with the Court of Appeals' separation of the particular claims here into "substantive" and "procedural" elements. We disagree in particular with its apparent conclusion that simply because a claim somehow can be construed as "procedural," it is cognizable in federal court by way of federal question jurisdiction.

*Id.* at 614.

Moreover, this state of the law has not budged in the almost four decades since *Ringer* was decided. Indeed, in *Porzecanski v. Azar*, 943 F.3d 472, 482 (D.C. Cir. 2019), the D.C. Circuit held that appeals of payment denials cannot be filed prospectively. Rather, they "can be filed 'only after the medical service for which payment is sought has been furnished.'" Quoting *Ringer*, the D.C. Circuit further held that, while allowing prospective challenges to future denials could theoretically be "equitable," this does not make the claim "different from 'essentially one requesting the payment of benefits.'" *Id.* The Court stated, further, that: "when prospective relief would functionally determine future claims, we cannot ignore the restrictive mandate of the Medicare Act's channeling requirement." *Id.* at 484. This accords with the D.C. Circuit's similar rejection of a claim like Plaintiff's that sought to sidestep the required administrative process. *Nat'l Ass'n of Rehab. Facilities, Inc. v. Bowen*, 840 F.2d 931, 932-33 (D.C. Cir. 1988) ("Plaintiffs may not invoke 28 U.S.C. §§ 1331, 2201 for the adjudication of an 'issue' and thereby circumvent

the prerequisites to judicial review which would attend presentation of that issue in the context of a concrete claim.").

In short, federal question jurisdiction over Plaintiff's case is "plainly" barred, "irrespective of whether [it] challenges the agency's actions on evidentiary, rule-related, statutory, constitutional, or other legal grounds." *Ill. Council*, 529 U.S. at 10; *accord Ringer*, 466 U.S. at 615, 621; *Salfi*, 442 U.S. at 760-61.

**B.      The Exception to Section 405(h)'s Jurisdictional Bar Is Not Applicable Here**

Plaintiff's claims also do not fall within the limited exception to Section 405(h)'s jurisdictional bar that was recognized by the Supreme Court in *Illinois Council*.  That case held that federal question jurisdiction is theoretically possible in cases where the Medicare statute completely lacks an avenue for seeking judicial review.  *Ill. Council*, 529 U.S. at 17.  In other words, 42 U.S.C. "§ 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19; *see also Nat'l Ass'n of Rehab. Facilities*, 840 F.2d at 933 (distinguishing *Schweiker*, 690 F.2d at 939, as hinging "most prominently" on the fact that there was "'no alternative form of judicial review'").

Plaintiff's fundamental problem is that application of the Medicare statute's channeling requirement in this case does not mean that there will be "no review at all" of the claims for Medicare reimbursement.  Binding Circuit authority unequivocally establishes that, even in cases where a particular Plaintiff may lack the right to file an administrative challenge to reimbursement denial, the channeling requirement "nonetheless applies" when an adequate proxy could raise the claims. *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 712 (D.C. Cir. 2011); *see also RICU LLC v. Dep't of Health & Human Servs.*, 22 F.4th 1031 (D.C. Cir. 2022); *Helomics, Inc. v. Novitas*, Civ. A. No. 15-1667, 2016 WL 374314, at *2 (W.D. Pa. Feb. 1, 2016) ("It matters not whether Plaintiff has an individual right to [administrative review of a Medicare claim].  So long

9

as third parties have an aligned incentive, channeling is required.") (citing *Physicians Hosps. of Am. v. Sebelius,* 691 F.3d 649, 658-59 (5th Cir. 2012)).

Here, the Medicare administrative review process is available to Medicare providers, suppliers, and beneficiaries, and their interests are not contrary to those of Regenative. Additionally, as discussed below, Regenative itself can participate in the administrative appeal process as an appointed representative.

In cases like this, the weight of case law holds that the exception to Section 405(h)'s bar on jurisdiction does not apply when there is any avenue for a claim to be heard.  *See RICU*, 22 F.4th at 1031; *Council for Urological Interests*, 668 F.3d at 712; *see also Three Lower Cntys. Cmty. Health Servs., Inc. v. Dep't of Health & Human Servs.,* 517 F. Supp. 2d 431, 435 (D.D.C. 2007) ("The Supreme Court has made clear that if this process is available, it must be followed, even if it is time-consuming, and even if the agency cannot grant the relief sought." (citing *Ill. Council*, 529 U.S. at 20, 22–23) (footnote omitted)).

Like Regenative, the plaintiff in *RICU* could not "bring an administrative challenge directly because it [was] not a Medicare enrolled provider." 22 F.4th at 1038.  In dismissing the complaint for lack of jurisdiction, however, the D.C. Circuit found that RICU's "customers," who can bill Medicare, were adequate proxies. *Id*. at 1039.  *See also Cal. Clinical Lab. Ass'n v. Sec'y of Health & Human Servs*., 104 F. Supp. 3d 66 (D.D.C. 2015) (association could not challenge a denial, but its members had access to the administrative appeals process); *Sensory Neurostimulation, Inc. v. Azar*, 977 F.3d 969 (9th Cir. 2020).  The same is true here, as Regenative's customers and Regenative want the same thing: Medicare reimbursement for Coretext and Protext.

In an unavailing attempt to circumvent the Medicare statute's channeling requirement, Plaintiff cites the decision of another Judge in this District in *Baxter Healthcare Corp. v. Weeks*,

10

643 F. Supp. 2d 111 (D.D.C. 2009) (Robertson, J.), which held that Section 405(h) does not preclude judicial review of a blood clotting manufacturer's challenge to Medicare's payment rules. *Id.* at 115-116.  That case, however, does not control here.  In *Baxter*, the court held that "Baxter is not suing on behalf of anyone who could seek administrative review of its claims."  *Id.* at 116. Consequently, the Court concluded that, even if the Baxter were able "to recruit a physician or hospital to act as its proxy in an administrative process[,]" that proxy would be so inadequate that channeling the claim through the administrative process "would mean no review at all."  *Id.* (citing *Ill. Council,* 529 U.S. at 19).

Plaintiff also cites *Akebia Therapeutics, Inc. v. Becerra*, 548 F. Supp. 3d 274 (D. Mass. 2021), in support of its attempt to circumvent the judicial review provisions of the Medicare statute.  That case likewise fails to advance Plaintiff's cause.  In *Akebia*, a district court in Massachusetts found jurisdiction for a manufacturer on the ground that it had no way to access the Medicare appeals process.  *Id.* at 287-88.  But critically, even though the court found for the *Akebia* plaintiffs, it further inferred that it would have reached a different result if it was in the D.C. Circuit. If that court were in this Circuit, in other words, it could not have found jurisdiction where, as here, there are entities that can present and exhaust the claim that Plaintiff presents.[3]

Plaintiff's citation to *Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852 (D.C. Cir. 2007), Pl. Opp. at 16, also provides no support for Plaintiff's quest for jurisdiction.  Indeed, it is inapposite because it involves a completely different set of Medicare benefits (Medicare Part D) that are governed by completely different statutory and regulatory provisions than this case

---

[3]     On appeal, the First Circuit expressly avoided the jurisdictional question.  *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 91-92 (1st Cir. 2020) ("[W]here, as here, an appeal presents a question of statutory jurisdiction, that question need not be resolved if a decision on the merits will favor the party challenging the court's jurisdiction.").

(Medicare Part B).[4]  *See id.* at 854 ("Whereas under Medicare Parts A and B the government pays providers on participants' behalf for goods or services received, under Part D the government contracts for and subsidizes insurance plans offered by private, third-party insurers.  [42 U.S.C.] § 1395w-115.").

Moreover, it was the unique nature of the Medicare Part D appeals process that supported the *Action Alliance* court's decision.  Unlike Part B, whose administrative process provides a path to judicial review, the *Action Alliance* court found that Part D had "its own, more narrowly-tailored provision for judicial review" that did not cover the plaintiff's claims.  *Id.* at 859.  Thus, unlike this case—where there is an administrative avenue to judicial review—*Action Alliance* was a straight-forward application of the *Illinois Council* exception providing judicial review in cases where "the Medicare statute appears to provide no avenue for judicial review."  *Id.* at 860.

In any event, this Court need not explore the outer boundaries of the *Illinois Council* exception, because this is not a close case—without question the claims in this lawsuit can receive judicial review after they have been channeled through the agency and the agency issues a final decision.  Therefore, Plaintiff's claims do not fall under the "no review" exception.

Finally, Regenative has a path here that also makes application of the exception to Section 405(h) especially inapplicable: the appointed representative option.  Under 42 C.F.R. § 405.910, Regenative can be made an appointed representative of an entity that has access to the administrative appeals process which, in turn, makes it possible for Regenative to demonstrate that

---

[4]    This case arises under Medicare Part B, which is authorized by 42 U.S.C. §§ 1395j-1395w-6 and is administered under the Secretary's regulations promulgated at 42 C.F.R. Part 414. *Action Alliance* was a Medicare Part D case, which is authorized by 42 U.S.C. §§ 1395w-101-1395w-154, and is administered under regulations promulgated at 42 C.F.R. Part 423.

Medicare reimbursement for its products does, in fact, pass muster under 42 U.S.C. § 1395y(a)(1)(A) and any other claims that it presents in this lawsuit.

It also bears mentioning that the question presented in this case—i.e., whether Medicare should cover and pay for Regenative's products that are provided to beneficiaries—cannot be resolved through a general lawsuit like this one. The determinization of whether a product is "reasonable and necessary for the diagnosis or treatment of an illness or injury" requires a fact specific analysis. Under the third Technical Direction Letter, the Secretary has directed the Medicare contractors to analyze each relevant claim and make an individualized determination on eligibility for payment. The fact specific nature of these types of coverage decisions—none of which Plaintiff has put before this Court—is precisely why courts routinely dismiss cases like this. For example, in *Southwest Pharmacy Solutions v. CMS*, 718 F.3d 436 (5th Cir. 2013), a pharmacy asserted that its claim fell within the *Illinois Council* exception to administrative exhaustion for two reasons: (1) because "the Medicare Part D regulations do not allow providers to bring coverage determination claims[,]" and (2) because an enrollee could not assign a claim to the pharmacy so that it could pursue an administrative appeal on the beneficiary's behalf. *Id.* at 444.

The Fifth Circuit found that neither reason was sufficient to authorize a waiver of the longstanding mandate that all claims for Medicare benefits proceed through the administrative appeals process. *Id.* The *Illinois Council* exception, the court held, was "extremely narrow and appropriately applied only in cases where judicial review would be entirely unavailable through the prescribed administrative procedures." *Id.* at 439. Unlike the situation where the *Illinois Council* exception applies, the *Southwest Pharmacy* court found that "the regulations do, however, allow for an enrollee to appoint a representative to navigate the appeals process on his behalf." *Id.* 444.

So too here.  Under 42 C.F.R. § 405.910, Regenative may be appointed as a representative by a beneficiary or a supplier to file and pursue an administrative challenge to any denied claims. As a representative, it will have access to the administrative appeals process.  Although Regenative argues that no proxy could have the incentive to diligently pursue administrative appeals because the government's actions have convinced suppliers and providers that its products are unsafe and therefore cannot be billed, the fact is that suppliers *have* continued filing dozens of claims and appeals.[5]  Moreover, taking Plaintiff's allegation at face value—that it is only interested in challenging the three Technical Direction Letters at issue and is not interested in challenging specific claims—there are already entities that have access to the administrative appeals process on record with this Court making similar claims.  *See, e.g.*, *Stimlabs LLC v. Becerra*, Civ. A. No. 22-01988 (APM) (D.D.C.), Notice of Related Case, ECF No. 7; *see also* Defendant's Memorandum in Support of Motion to Dismiss at 15, ECF No. 17 (explaining that two of the plaintiffs in that case are suppliers with access to the appeals process and that one of the plaintiffs participates in the appeals process as an appointed representative).

Accordingly, there is "no complete preclusion of judicial review" under the Medicare statute.  The channeling requirement addressed in *Illinois Council* applies, federal question jurisdiction is precluded, and this Court should dismiss this case.  *Council for Urological Interests*, 668 F.3d at 712-13.

---

[5]     Plaintiff argues that the Secretary's safety warnings are preventing providers from filing claims.  Pl. Opp. at 17.  But Plaintiff's own Amended Complaint shows that allegation is untrue: Plaintiff claims that the contractors are requiring providers to submit "impossible to submit documentation" to support their claims, which means that providers are in fact submitting claims. Am. Compl. ¶ 117.

### C.       There Is No Final Determination

Under the APA, a district court can only review final agency action.  *See* 5 U.S.C. § 704.

Consequently, even if this Court were to find that the narrow *Illinois Council* exception to the

jurisdictional bar applies to Plaintiff's claims, there still would not be a final agency decision for

the Court to review because CMS has expressly rescinded the first two Technical Direction Letters

instructing contractors to automatically deny claims seeking reimbursement for products like

Regenative's.

The third Technical Direction Letter, moreover, cannot constitute a final decision of the

Secretary because it merely instructs the contractors to apply the Medicare statute's reasonable

and necessary standard to the relevant claims.  As noted above, resolving that issue turns on

whether Plaintiff's products are, in fact, reasonable and necessary to treat a specific Medicare

beneficiary's medical condition.  Any review in the absence of a factual record and a final decision

based on that record would only waste the resources of this Court and both parties.  *See Texas v.*

*United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal

quotations omitted)); *Full Value Advisors, LLC v. SEC*, 633 F. 3d 1101, 1107 (D.C. Cir. 2011)

("claim is not ripe where the possibility that further consideration will actually occur before

implementation is not theoretical, but real").

### D.       Mandamus is Inapplicable in this Case

As Defendants explained in their opening brief, this Court does not have Mandamus

jurisdiction.  Defendants' Memorandum in Support of Motion to Dismiss at 22, ECF No. 23.  For

this Court to properly exercise its mandamus jurisdiction, Plaintiff must show that "(1) [it] has a

clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate

remedy available to the plaintiff." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). Plaintiff simply has not met this substantial burden.

On the most fundamental level, Plaintiff cannot identify a statutory or other provision that imposes a clear, non-discretionary duty to provide coverage of, or payment for, Protext or Coretext (or any other amniotic or placental tissue product for injection). Instead, Medicare contractors are making their coverage and payment determinations based on whether these items meet the "reasonable and necessary" statutory requirement mandated by 42 U.S.C. § 1395y(a)(1)(A).

That standard is the antithesis of a ministerial, non-discretionary standard. It requires the Secretary to bring to bear his agency's expertise to determine whether a myriad of products and services meet the statutory reasonable and necessary standard for treating each beneficiary's specific medical condition. Moreover, because the statute unequivocally instructs the Secretary that "no payment may be made" for any claim that does not pass muster under the reasonable and necessary standard, the simple fact of the matter is that the Medicare Program owes no duty to this Plaintiff. The Court need proceed no further.

The Amended Complaint also fails the "no other adequate relief" standard because Congress has established an administrative appeal process where the Plaintiff's customers, and even Plaintiff itself as an appointed representative, can present a case that Medicare should pay for its products because they are, in fact, reasonable and necessary to treat a particular beneficiary's medical condition. This process makes it possible to pursue judicial relief if the Secretary's final decision is adverse to Plaintiff. In an instance such as this, mandamus jurisdiction is clearly unavailable.

## II.    PLAINTIFF'S ALLEGATION THAT THE SECRETARY HAS CONTINUED TO FOLLOW THE FIRST TWO TECHNICAL DIRECTION LETTERS FAILS THE STANDARDS OF *IQBAL* AND *TWOMBLY*

Even if Plaintiff could establish subject-matter jurisdiction for its claim (and it cannot), it has not adequately pleaded that the Secretary has fraudulently claimed that its policies were actually rescinded when they were not.  Consequently, its suit should be dismissed under Federal Rules of Civil Procedure 8(a) and 12(b)(6).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court has clearly stated that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plaintiff, moreover, must provide "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 662.  Instead, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. at 678 (internal quotations and citation omitted).  Accordingly, conclusory allegations of illegal conduct are insufficient under *Iqbal*.  *See id*.  Put differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Thus, to survive a motion to dismiss, a plaintiff must plausibly allege specific facts that, if true, would entitle the plaintiff to judgment in his favor. Plaintiff has failed to do so.

CMS rescinded the Technical Direction Letters dated February 2, 2022, and February 16, 2022, when it published the March 25, 2022, Letter directing the MACs to institute claim-by-claim reasonable and necessary review for claims for amniotic and placental tissue product injections. *See* Defs.' Ex. C, ECF No. 23-3, March 25, 2022 TDL-220299 ("The purpose of this Technical Direction Letter (TDL) is to rescind TDLs 220221 and 220240.").  Plaintiff asserts that this was a

"faux" recission and that the MACs in fact continue to apply the automatic denial of the two earlier Letters.  Am. Compl. ¶¶ 108-16.  But Plaintiff provides nothing more than vague allegations about an unidentified individual who allegedly spoke with an unidentified employee of one of the contractors on an unspecified date who stated that the first two Letters are still in force. Notwithstanding the evidentiary problems presented by this allegation, the simple fact of the matter is that Plaintiff has extrapolated one alleged conversation with one alleged employee at one contractor to all such Medicare claims processed by every Medicare contractor without providing any factual support for such a broad allegation.  Am. Compl. ¶¶ 116-19.

Plaintiff also fails to provide any context for the conversation and ignores the fact that the statements of one potentially confused employee cannot bind all of the contractors let alone the Secretary.[6]  These allegations are simply insufficient to raise Plaintiff's claims beyond the level of "naked assertions," and are therefore insufficient to defend against a motion to dismiss.  *Twombly*, 550 U.S. at 557.

Moreover, Plaintiff itself makes statements that undermine the plausibility and veracity of its own allegations.  Plaintiff argues that the contractors are still automatically denying claims and failing to engage in a claim-by-claim review.  Am. Compl. ¶¶ 108-19, "Pl.  Opp. at 26.  At the same time, it claims that the contractors are requesting that suppliers provide information that goes

---

[6]     Even assuming that such a confused employee exists, these allegations provide yet another reason why hearing this case at this juncture will waste judicial resources.  To the extent any contractor's employee actually stated that the two rescinded Technical Direction Letters are still in place or that any contractors are still applying the now-rescinded policies (and the Secretary has found no evidence that the rescinded policies are still being applied), then the Secretary could take action to make corrections, saving this Court's resources for actual cases and controversies.  Nor is this reason to not dismiss the contractors from this suit.  If the contractors are flaunting the Secretary's instructions (and there is no evidence that they are), then the Secretary has tools, including correction through the administrative appeals process, to remedy that situation.

to an evaluation of Coretext and Protext under the reasonable and necessary standard, including information about FDA clearance.  Am. Compl. ¶ 117.

It is not plausible that contractors would ask for this documentation in cases of automatic denials.  Rather, contractors only ask for additional documentation, which may include a patient's medical record, studies that support safety and efficacy of the product, and information on FDA approval or pathway, when they are conducting an analysis of whether a particular product's use is reasonable and necessary to treat a particular beneficiary's condition.  This information—as well as any arguments that could be presented by the Plaintiff or its proxy during administrative proceedings—explaining why this evidence is (or is not) relevant to the claim at hand will ultimately be included in any administrative record.  Consequently, if Plaintiff remains dissatisfied with the Secretary's final determination in an administrative proceeding, this record –along with the agency's final decision based on the facts contained therein—would be filed with the appropriate district court.   Until then, this Court lacks jurisdiction over Plaintiff's claims.

*      *      *

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the Verified Amended Complaint

for lack of subject-matter jurisdiction under Rule 12(b)(1).


Dated: October 21, 2022                    Respectfully submitted,
          Washington, DC

                                            MATTHEW M. GRAVES, D.C. Bar #481052
                                            United States Attorney

                                            BRIAN J. HUDAK
                                            Chief, Civil Division

                                            By: /s/ *Diana V. Valdivia*
                                                 DIANA V. VALDIVIA, D.C. Bar #1006628
                                                 Assistant United States Attorney
                                                 601 D Street, N.W.
                                                 Washington, D.C. 20530
                                                 T: (202) 252-2545
                                                 diana.valdivia@usdoj.gov

                                            *Counsel for Defendants*



*Of Counsel*:
     SAMUEL R. BAGENSTOS
       *General Counsel*

     JANICE L. HOFFMAN
       *Associate General Counsel*

     SUSAN MAXSON LYONS
       *Deputy Associate General Counsel for Litigation*

     JULLIA CALLAHAN BRADLEY
       *Attorney*

     *U.S. Department of Health and Human Services*